Edward J. Maroney, for appellant.

M. H. Newman, for respondents.

LEHMAN, J. The plaintiff sues for a balance of $173.60, which he alleged was due and unpaid upon an account for goods sold and delivered amounting to $315.75. The defendants admit that the goods were sold and delivered, but claim that they have not only paid for the goods, but have overpaid the account by mistake by $26.80. The trial justice has found in favor of the defendants, and has awarded judgment on the counterclaim for $26.80.

It is not disputed that the defendants have paid one bill of $26.80, and that thereafter they received a bill for $270.10, upon which they paid $96.40, deducting the amount of $173.70, which they claim they had already paid upon a previous bill. The sole issue was whether or not the defendants had already paid this sum of $173.70. To prove this payment the defendants introduced evidence that after they paid the bill for $26.80 they received another bill for $173.70; that they paid this bill without noticing that it included the amount of the previous bill already paid. The plaintiff denies the payment, but the trial justice determined this issue in favor of the defendants upon conflicting evidence, and no reason appears why his determination should be disturbed.

He erred, however, in giving judgment for the defendants upon their counterclaim, for the evidence shows only payment and not an overpayment of the plaintiff's account. It is true that their payment of $173.70 was an overpayment of the amount then due; but the defendants have deducted the whole amount, including the overpayment, from the subsequent bill for $270.10. This bill included all the items on the bill for $173.70, except the item of $26.80 already paid. By deducting the full amount of $173.70, the defendants received credit upon the last bill for their overpayment of the previous bill.

It follows that the judgment should be modified, by dismissing the counterclaim, and, as modified, the judgment in favor of the defendants should be affirmed, without costs on this appeal. All concur.

---

## ORAFINA v. NEW YORK STATE RYS.

(Supreme Court, Appellate Division, Fourth Department. December 29, 1911.)

RAILROADS (§ 316*)—OPERATION—NEGLIGENCE.

A railroad company, operating a fast suburban train service between cities over its own roadway and running cars at frequent intervals, need not run its cars, when approaching a highway crossing, so as to be able to stop within a comparatively few feet; but where it operates its cars over a crossing about 1,500 feet from a small village, and where there are only three houses along the highway within about 1,000 feet from the track, it may run at a high speed, on giving the required signals for the crossings, without becoming liable for the death of a child struck at the crossing.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1006–1008; Dec. Dig. § 316.*]

---

Appeal from Trial Term, Ontario County.

Action by Angello Orafina, administrator of Congetta Orafina, deceased, against the New York State Railways. From a judgment for plaintiff, and from an order denying a motion for new trial made on the minutes, defendant appeals. Reversed, and new trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, and KRUSE, JJ.

Frank Rice, for appellant.
S. M. Vella, for respondent.

McLENNAN, P. J. Plaintiff's intestate, a child 4 years and 4 months of age, was struck and almost instantly killed by one of the defendant's cars at about 1:30 p. m. on May 10, 1910, at a highway crossing in the town of Victor, Ontario county. The defendant owned and operated a suburban electric railroad, extending from Geneva to Rochester, a distance of about 45 miles, passing through Victor and Canandaigua. The crossing in question is 1,917 feet, along the highway, from the east corporation line of Victor, and 1,492 feet, along defendant's tracks, from the east corporation line. Victor is an incorporated village of 881 inhabitants.

At the crossing the railroad runs nearly east and west, and the highway nearly north and south. The parents of the deceased occupied a house on the highway about 245 feet south of the crossing. Between this house and the railroad track is another house, 150 feet distant from the track, and the only other house in sight to the south is more than 1,000 feet from the track. On the north side of the track there is but one house on the highway between the crossing and the east corporation line. The defendant's track is perfectly straight for more than 1,500 feet in each direction from the crossing, and nothing obstructs the view except the trolley poles and the wing fences at the crossing. The day of the accident was a bright, clear day. Shortly before the accident the intestate was in the yard at its home, with its mother and other children, and in some manner, unnoticed by its mother, the child made its way to the crossing, and, with a short stick in its hand, was playing about the tracks when defendant's car came in sight. The car was traveling west at the rate of about 45 miles per hour, and the motorman, after he saw the child upon or near the track, was unable to stop the car before hitting the child, and ran some 65 feet beyond the crossing before stopping the car.

The trial court submitted to the jury five questions to be answered, as follows: (1) Did the motorman use reasonable care and diligence in discovering the child and stopping the car? (2) Was the car running at a reckless and dangerous speed as it approached the crossing? (3) Was it running at such speed as to be beyond reasonable control in approaching such crossing? (4) Was the defendant negligent? (5) Was the plaintiff negligent? To the submission of all these questions, except the first, defendant's counsel excepted. The jury answered "Yes" to each of the first four questions, and "No" to the fifth, and found for the plaintiff in the sum of $900.

It will thus be seen that the question of defendant's negligence in failing to discover the child on the track, or in failing to bring the car to a stop after discovering it, is not before us, as the jury have determined that question in defendant's favor. It therefore becomes important principally to determine whether negligence on the part of the defendant can be predicated solely on the alleged excessive and reckless speed of the car. The car traveled over defendant's own private right of way in this locality, and it is uncontradicted that the motorman sounded the whistle at about 1,000 feet east of the crossing. As soon as he saw the child the whistle was again blown and the gong sounded, and no question is raised as to the sufficiency of these warnings. Defendant's counsel requested the court to charge:

"That if the jury find that the defendant gave a proper signal, either by ringing the bell or blowing the whistle, on approaching this crossing, sufficient to warn travelers in the highway, they cannot find a verdict against the defendant, predicated solely on the speed at which this train was going as it passed this crossing."

To which the court replied:

"That would be absolutely true as to a railroad train. I decline to charge differently than I have charged, however, in this case."

The court had previously charged as follows on this point:

"I submit to you, also, the speed at which the car was running, and whether it was a dangerous and reckless rate of speed in approaching such a crossing as this; and was it such a rate of speed as put the car beyond the control of the operator, using fair effort to bring it in hand before reaching the crossing?"

To the submission of this question, and to the refusal to charge as requested, defendant duly excepted. We think the court erred in submitting this question to the jury, and in refusing to charge as requested by defendant's counsel as above stated. The defendant was operating a fast suburban train service between two cities 45 miles apart, over its own right of way for most of the distance. Its cars, running at frequent intervals, are of great accommodation to the traveling public. But its efficiency and usefulness would be greatly impaired if it were obliged to run its cars on approaching each country highway crossing at such rate of speed as to be able to stop them within a comparatively few feet. Under such conditions it could not successfully compete with steam trains nor render satisfactory service to the public. We think that under the facts in this case the defendant was bound to exercise no greater degree of care than would be imposed upon a railroad company operating a train propelled by steam under like circumstances. The car was properly equipped with brakes. The motorman gave sufficient warning on approaching the crossing, and used reasonable diligence in discovering the child, and in attempting to stop the car after discovering it. Under these circumstances the defendant was guilty of no negligence. Kozlowski v. R., S. & E. R. R. Co., 142 App. Div. 245, 126 N. Y. Supp. 609.

Some evidence was offered tending to show that the defendant was negligent in maintaining at this crossing wing fences of such construc-

tion as to obstruct the view of the motorman and prevent his seeing the child near the tracks in time to bring his car under control. The evidence and the photographs submitted as exhibits show that the wing fences in question were of the kind ordinarily built at highways by nearly all railroads. Section 52 of the railroad law (Consol. Laws 1910, c. 49) required the defendant to maintain fences and cattle guards at highway crossings. We think the evidence did not warrant the submission to the jury of the question of defendant's negligence in this respect.

Having reached this conclusion, it becomes unnecessary to consider the question of contributory negligence. For the errors stated, the judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide the event.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event. All concur.