WILHELM ALBRECHT, as Administrator of the Estate of HENRY A. O. ALBRECHT, Deceased, Respondent, *v.* ROCHESTER, SYRACUSE AND EASTERN RAILROAD COMPANY, Appellant.

Negligence — railroads — action for death of child, non sui juris, who was struck by a trolley car while on the track — duty of defendant to avoid accident — burden of showing negligence of defendant is upon the plaintiff.

1. Where a child of tender age is seen approaching a railroad track by a motorman, it is his duty to use his best endeavor to save the child and not wantonly or carelessly run it down, but the burden of showing negligence is upon the party asserting it, and it, therefore, becomes the duty of plaintiff in an action to recover for the death of the child, to show either by experts or other witnesses that the car could have been stopped in time to have saved the child.

2. Upon examination of the facts with reference to the death of a child one year and three months old by being run over by a car on a trolley road, assuming that the question of negligence of the parents in permitting the child to escape upon the track was a question for the jury, *held*, that since the weight of the car that had to be stopped, its momentum, the grade and the conditions of the rails were all elements to be taken into consideration in determining whether the motorman discharged his duty, upon defendant's testimony upon these questions and in view of the fact that the plaintiff gave no evidence upon the subject, no question of fact was raised upon this branch of the case that justified the court in submitting it to the jury.

*Albrecht* v. *Rochester, S. & E. R. R. Co.*, 142 App. Div. 910, reversed.

(Argued March 27, 1912; decided April 9, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 23, 1910, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Ernest I. Edgcomb* for appellant.   The motorman had no reason to expect that a helpless infant, without sufficient knowledge or ability to escape when warned of danger, would stray upon the right of way.   He did everything in his power to avert the accident the instant he discovered that the child was in a place of danger.   No negligence on the part of the defendant was shown, and the complaint should have been dismissed.   (*Chrystal* v. *T. & B. R. R. Co.*, 105 N. Y. 164; 124 N. Y. 519; 141 N. Y. 572; *Prendegast* v. *N. Y. C. & H. R. R. R. Co.*, 58 N. Y. 652; *Foley* v. *N. Y. C. & H. R. R. R. Co.*, 78 Hun, 248; *Malone* v. *B. & A. R. R. Co.*, 51 Hun, 532; *White* v. *Albany Railway*, 35 App. Div. 23; *Stabenau* v. *A. A. R. R. Co.*, 155 N. Y. 511; *Bittner* v. *C. Ry. Co.*, 153 N. Y. 76; *Benoit* v. *T. & L. R. R. Co.*, 154 N. Y. 223; *Wynn* v. *C. P., N. & E. R. R. Co.*, 133 N. Y. 575; *Piehl* v. *Albany Railway*, 19 App. Div. 471.)

*Percival De Witt Oviatt* for respondent.   There was sufficient evidence in the case to warrant the submission to the jury of the question of the negligence of the defendant.   (*Kenyon* v. *N. Y. C. & H. R. R. R. Co.*, 5 Hun, 479; *Neuberger* v. *L. I. R. R. Co.*, 131 App. Div. 885.)

HAIGHT, J.   This action was brought to recover damages for the alleged negligent killing of the plaintiff's intestate.   The decedent was a son of the plaintiff, one year and three months of age, who had escaped from the custody of his parents and walked out upon the defendant's right of way where he was struck in the head by the step of the defendant's car as it was passing, causing the death of the child.

The plaintiff was a farmer residing in the town of Perinton, Monroe county, about half a mile west of the

village of Fairport on the northern bank of the Erie canal. The defendant's right of way abuts upon and along the northern side of the canal, on which there are two tracks known as the west and the east-bound tracks. The plaintiff's residence is north of the defendant's right of way, his house facing upon the Basket road, so called, which runs across the defendant's right of way to the towpath of the canal, which is used as a highway for the residents in that locality. On the rear of plaintiff's house there is a private right of way that runs across the railroad tracks to the towpath. The house is surrounded by a fence with a gate opening out from the rear on to the private right of way.

On the morning of May 17th, 1909, the child was placed in the custody of his sister, thirteen years of age, who was directed to watch him while his mother was engaged in her household duties. A rag peddler entered the gate and inquired for rags. The mother, from the inside of the house, answered that she had none, and then the sister of the child left him in the yard upon the ground while she ran over to her brother's house, known as the tenant house, for the purpose of seeing if there were any rags there. At the time the sister left the child upon the ground the gate was fastened with a hook through a staple down near the ground. After the sister had gone to the other house the rag peddler departed; whether he left the gate open or not is not disclosed by the evidence. The child did escape through the gate either by reason of its being left open by the peddler or by his picking the hook out of the staple and getting through himself. He then walked toward the railroad tracks and had reached a point about two feet distant from the first track when he was struck by the passing car.

The plaintiff, the father of the child, was at work in a lot between his residence and the tenant house plowing, about four hundred feet distant. The tenant house was facing upon the railroad tracks, three hundred and two

feet east of the point of the accident. The car was approaching from the east, going west towards Rochester, and was running at a speed of about thirty-five miles per hour, the motorman saying it was from thirty-five to forty miles, the plaintiff stating that it was running at a high rate of speed, the mother of the child expresssing it as flying. Beyond the tenant house there is a considerable curve in the road which soon shuts off the view of it from the point of the accident. Upon the house side of the right of way are a number of telegraph or telephone poles besides the poles that were used by the company for the support of the trolley wire, and a few feet east of the place of approach of the child was a large stump which also obstructed the view to some extent. We thus have a situation where the child, who was just able to walk, proceeding behind the stump, trolley and telegraph poles towards the railroad track and the car approaching from the east at the speed specified. As the car came in front of the tenant house the motorman first discovered the child approaching the track. Instantly he sounded the danger whistle and put on the emergency brakes and endeavored, as he claims, to his utmost to stop the car in time to save the child, but was unable to do so until after the child was hit and the car proceeded from one hundred and eighty to two hundred feet beyond the place of the accident. The father of the child heard the danger signal, looked up and saw the car as it was passing the tenant house and also saw that his child was out within two feet of the tracks. He at once halloaed and started to run toward the child. The mother heard the warning signal and looked out of the house and saw the car pass but did not see the child. The child was dead when he was subsequently picked up from the ground.

The evidence, thus far, is without substantial dispute.

The plaintiff having rested, the defendant asked for a nonsuit upon the grounds that the law imposed upon the parents of this child the duty of using reasonable care to

protect it from harm and danger, it being *non sui juris.*
That it appears from the evidence that the parents failed to
exercise such care and that the infant was thereby brought
in danger and suffered death and that the negligence of
the parents in this regard is attributable to the child and,
therefore, the plaintiff cannot recover. And further that
the plaintiff has failed to show that the defendant failed
to perform any duty which it owed the plaintiff's intes-
tate and has failed to show that the defendant was guilty
of any neglect which caused the accident in question.
The motion was denied and an exception was taken by
the defendant. Thereupon the defendant produced evi-
dence tending to show that the car weighed some thirty-
eight tons; that it was running at a speed of thirty-five
to forty miles per hour; that it was running upon schedule
time and at its usual speed through the open country at
this part of its route; that an experiment had been made
with this car by the officers of the company at this place,
in which it was tested as to whether the car could be
stopped sooner when it was proceeding upon that speed,
and that under the experiments made the car on each of the
experiments stopped within its length of the place where
the car stopped on the occasion of the accident; that the
car at the time of the accident was proceeding down
grade and that on that morning there was a mist which
made the rails slippery.

The plaintiff, however, testified that, while the rails
were wet earlier in the morning they had dried up at the
time of the accident. At the conclusion of the evidence
the defendant moved for direction of a verdict upon the
same grounds upon which it had based its motion for a
nonsuit, which motion was denied and another exception
was taken.

Assuming that the question of the negligence of the
parents in permitting the child to escape on to the railroad
tracks was a question for the determination of the jury,
still we entertain the view that the plaintiff failed to

show that the defendant's motorman was negligent. Not a witness was called, nor attempt made on the part of the plaintiff, to show that the car could have been stopped in time to save the child. It is true that after the child, approaching the track, came into the view of the motorman, it became his duty to use his best endeavors to save the child and not wantonly or carelessly run it down, but the burden of showing negligence rested upon the party asserting it, and it, therefore, became the duty of the plaintiff to show either by experts or other witnesses that the car could have been stopped in time to have saved the child. This is not a case in which the court or jury can take judicial notice of the time within which a car could be stopped. Such time depended upon the testimony that should have been given upon the trial. The only evidence we have upon the subject is the evidence furnished by the defendant and the experiments that its witnesses had made subsequently with the car which caused the accident. Assuming that the car was running at a speed of thirty-five miles per hour, and that the child, approaching the track, came into the view of the motorman in front of the tenant house, he was then within six seconds of the child, and whatever he could do to save it, he had to do within that time. The sounding of the danger signal and the putting on of the emergency brake, while it did not occupy much time, it necessarily would a second or more, and yet during this time he was flying toward the child at the rate of upwards of fifty feet per second. The weight of the car that had to be stopped, its momentum, the down grade and the condition of the rails were all elements that had to be taken into consideration in determining whether the motorman discharged his duty. Adopting defendant's testimony, it could not have found that the motorman failed in this regard; and in view of the fact that the plaintiff has not supplied us with any evidence upon the subject, we are of the opinion that no question of

fact was raised upon this branch of the case that justified the court in submitting it to the jury. (*Chrystal* v. *Troy & Boston R. R. Co.*, 105 N. Y. 164.)

The judgment should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., GRAY, VANN, WERNER, HISCOCK and COLLIN, JJ., concur.

Judgment reversed, etc.