IRVING LETZTER, an Infant, by YETTA LETZTER, His Guardian ad Litem, Respondent, *v.* OCEAN ELECTRIC RAILWAY COMPANY, Appellant.

Second Department, May 21, 1920.

Street railways — negligence — action for injuries received by collision at crossing between plaintiff's automobile and defendant's trolley car operated on tracks of railroad — negligence and absence of contributory negligence for jury — plaintiff not guilty of contributory negligence as matter of law where flagman did not give warning — right of way at street crossing between vehicle and trolley car operated on track of railroad.

In an action to recover for personal injuries caused by one of defendant's cars striking plaintiff's automobile while it was stalled on the track and pushing it against the plaintiff, it appeared that the defendant was

operating its cars at the place of the accident over the tracks of a steam railroad and that the accident occurred at a crossing which was equipped with gates and guarded by a flagman; that the gates were out of repair temporarily and not in operation; that the plaintiff, who was familiar with the place, did not know that the gates were not in operation; that at the point of the accident there were three tracks, and the plaintiff in order to avoid a collision with a railroad train jammed on his brakes and turned on the first track and there stalled his engine, and before he could start it again the defendant's car struck the plaintiff's automobile, pushing it against the plaintiff and injuring him. There was a conflict in the evidence as to whether the flagman warned the plaintiff.

On all the evidence, *held,* that the questions of negligence and freedom from contributory negligence were for the jury.

If the flagman was at his shanty and gave no signal, it cannot be held as a matter of law that the plaintiff was guilty of contributory negligence in approaching so closely to the first track before discovering the train on the middle track.

The acts of the plaintiff after his engine stalled may be considered as taken in an emergency and it was for the jury to decide in regard to them.

It was for the jury to determine whether or not the motorman, who knew that the gates were not working, should have seen the plaintiff and recognized his predicament in time to stop the car.

A fast suburban trolley line operated over the tracks of an ordinary railroad has a paramount and superior right of way over vehicles at street crossings.

The charge that the defendant did not have a superior right of way at the street crossing was prejudicial, for if the correct rule had been charged the jury would have been more apt to hold that the motorman was not negligent in not starting to stop when he was near enough to avoid the collision, and to find that the plaintiff should have exercised a more vigilant outlook.

APPEAL by the defendant, Ocean Electric Railway Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Queens on the 15th day of July, 1919, upon the verdict of a jury for $12,500, reduced by the court to $9,000, and also from an order entered in said clerk's office on the 23d day of July, 1919, denying defendant's motion for a new trial made upon the minutes.

*Thomas J. Brennan* [*Joseph F. Keany* with him on the brief], for the appellant.

*Henry M. Dater* [*Jay S. Jones* and *Isadore Apfel* with him on the brief], for the respondent.

MILLS, J.:

The action was brought to recover damages for personal injuries which the plaintiff, a boy sixteen years of age, received from a collision of one of defendant's electric cars with an automobile which plaintiff was driving on January 17, 1918, at the crossing of the Long Island railroad tracks, at or near Far Rockaway, alleged to have been caused by the carelessness of defendant's employee in operating the car. The answer admitted defendant's operation of the car over the Long Island railroad tracks at the crossing of those tracks by Atlantic avenue, which is where the accident happened, but denied the other allegations of the complaint. The jury rendered a verdict for $12,500, but the trial justice set it aside unless the plaintiff would stipulate to reduce it to $9,000, which plaintiff did, and judgment upon the reduced amount was entered.

Appellant makes here two main contentions, namely:

(a) That the finding imported by the verdict that plaintiff was free from contributory negligence was against the evidence, or at least the weight thereof, and

(b) That the trial justice erred to the substantial prejudice of the appellant in charging the jury that the rights of the plaintiff and defendant were equal at that crossing.

Appellant also contends that its negligence was not affirmatively proven; but I do not consider the latter contention to have sufficient weight to justify discussing it independently.

As to the first contention, the material facts as tended to be proven by plaintiff's evidence are the following:

The railroad tracks there run approximately north and south upon a private right-of-way, that is, one belonging to the Long Island Railroad Company, and was used by both that company and the defendant, having three tracks. Atlantic avenue runs nearly east and west, or rather northwest and southeast, and crosses the tracks at grade. The crossing is equipped with gates which, however, at the time of the accident were, and for several days had been, frozen, so as not to be operated; but while plaintiff was familiar with the general situation, he did not know that the gates were not in working order. The crossing was also equipped with a flag or signalman, whose usual station was on the south

side and west of the crossing. The accident happened at about four P. M. of a clear, cold day. The plaintiff, being then about sixteen years of age, was driving an automobile easterly on Atlantic avenue, sitting in the front seat, on the left side, with his sister and another young woman upon the back seat. As he approached the crossing, there were upon his right several buildings near the tracks which considerably obstructed his view south along the tracks. When about twenty feet from the nearest track he slowed down to seven or eight miles an hour; and at that point he could see only about fifty feet to the south. The gates were up, having been frozen fast for several days, and the signalman was standing over by his shanty, but he waved no flag and gave no signal to the plaintiff and at no time was out on the tracks. As plaintiff passed the line of the buildings he looked in both directions and saw nothing approaching, but as he went upon the nearest track he looked again, south, and saw a train approaching from the south on the second, or middle, track about seventy-five feet away. That was a Long Island train consisting of several cars. At the sight of that train plaintiff jammed on his brakes and made a quick turn of his car to the left to avoid collision with the train, and his auto stalled, with its rear on the first rail of the first track and its front facing north. He tried to start his auto with the self-starter, but did not succeed, and then he got out of the car and went to the rear wheels and examined them, the right one first and then the left one. Before getting out he looked for approaching cars in both directions and saw nothing, and before going to the left wheel he looked again and saw nothing, but on looking a second time saw defendant's electric car which was some fifty feet in length approaching from the north, but being then some four hundred feet away. He proceeded to examine the wheel chains when the auto was struck by the car on the other side, and the auto in turn struck the plaintiff; and the car pushed the auto and the plaintiff along some twenty feet, causing the plaintiff's injuries.

The evidence of the defendant, upon the other hand, tended to show that the signalman was at the center of the crossing between the tracks, waving his flag, and that the auto approached at a high rate of speed, and that the motorman

stopped as soon as he could after seeing and realizing the situation of the auto.

I think that upon the above-recited evidence both questions, namely, that of negligence and that of freedom from contributory negligence, were for the jury to decide. If, as plaintiff claims, the flagman was at his shanty and gave no signal, I think it cannot be held contributory negligence as a matter of law or even by the weight of the evidence, for plaintiff to approach so closely · to the first track before discovering the train approaching upon the middle track; and that his action after his engine stalled may be considered as one taken in an emergency and so for the jury to decide in regard to it. I think also that it was a fair question for the jury to determine whether or not the motorman, who knew that the gates were not working, should have seen the plaintiff and recognized his predicament in time to stop the car. Therefore, I conclude that the first · contention of appellant here is not well made.

As to the second contention of appellant, namely, that of error in the charge, the question presented is far more difficult. The learned justice charged the jury that the rights of the parties, *i. e.*, the auto and defendant's car, were upon the evidence equal at that crossing, which is the well-known rule applicable to an ordinary street car at a street crossing. To that instruction defendant's counsel excepted and requested the court to charge that defendant's car at the crossing had a superior and paramount right-of-way; in other words, that the well-known rule applicable to an ordinary railroad running upon its own right-of-way at a highway crossing applied. The court refused that request, and defendant's counsel excepted.

I think the instruction thus challenged was erroneous and that the request was correct and should have been charged. (*Orafina* v. *New York State Railways*, 148 App. Div. 417; *Albrecht* v. *Rochester, S. & E. R. R. Co.*, 205 N. Y. 230; *Dioguardi* v. *Nassau Electric R. R. Co.*, 164 App. Div. 896.) I take it that the case is that of a fast suburban trolley service upon the right-of-way owned by an ordinary railroad company. It appears that defendant's cars stop at the nearby station only when there are passengers for that station, *i. e.*,

only upon signal. Moreover, this evidence was even more than that of simply a trolley service upon its own right-of-way; it was that of the running of trolley cars over the tracks of a regular steam railroad, viz., the Long Island Railroad Company. The mere fact that gates were there and that their operation was permitted by public authority, indicates to my mind that the defendant's cars had the paramount right. In this case we have a curious situation, for according to the law of the learned trial justice, if the accident had happened with the train of cars belonging to the Long Island Railroad Company that train would have had the benefit of the paramount right rule; but inasmuch as it happened a minute later, with the passing of defendant's trolley car over the same crossing, upon the same tracks and under similar conditions, the rule of mere equal rights obtained against the car. I do not subscribe to that distinction, but regard it as fanciful and unsound.

The question remains: Could the defendant reasonably have been damaged by the erroneous instruction? I think it might well have been so damaged. The case was a close one upon each issue. With the true rule the jury would have been more likely to hold that the motorman was not negligent in not starting to stop when he was near enough to avoid the collision and to find that plaintiff should have exercised a more vigilant outlook.

Therefore, I advise that the judgment and order appealed from be reversed and a new trial granted, with costs to abide the event.

PUTNAM and BLACKMAR, JJ., concur; JENKS, P. J., and JAYCOX, J., concur in the result.

Judgment and order reversed and new trial granted, with costs to abide the event.