WILL LEE, as Administrator, etc., of JOSIE LEE, Deceased, Respondent, *v.* PENNSYLVANIA RAILROAD COMPANY, Appellant.

Fourth Department, May 15, 1935.

*Harold J. Adams* [*Percy R. Smith* of counsel], for the appellant.

*Harold J. Tillou*, for the respondent.

EDGCOMB, J. In the early morning of August 25, 1933, Josie Lee, a young girl eighteen years of age, was struck and killed by a passenger train of the Pennsylvania Railroad Company at a highway crossing near Franklinville, N. Y. A jury has found that her untimely death was occasioned by the negligence of the railroad company, and has awarded the plaintiff a verdict in the sum of $6,000. Defendant appeals.

Decedent was on her way to Philadelphia at the time in an automobile owned and driven by her brother. She sat on the rear seat with two companions. The highway at this point runs alongside the railroad for some distance, and then makes a sharp turn to the left, and crosses defendant's tracks on a slight upgrade. In making this turn the car tipped over on the second or north-

bound track. All the occupants, with the exception of decedent, succeeded in getting out of the car, but before she could be extricated a passenger train of the defendant came along, and crashed into the automobile.

The case was submitted to the jury upon the theory that the doctrine of the last clear chance was involved. While various interpretations have been placed upon this principle by the American courts, and while a corresponding confusion has arisen as to when an application of the rule is warranted, we fail to see how, under any hypothesis, the doctrine can properly be applied to the facts in the instant case.

This dogma is a limitation upon the defense of contributory negligence. In order to be invoked, the injured party must be in a present perilous situation as the result of his own want of care, and the peril must be known to the defendant in time to afford him an opportunity to avoid injuring the one in jeopardy. Under such circumstances a duty rests on the defendant to use the last chance to avert an accident, if possible. The doctrine can only apply where the negligence of the defendant is the proximate cause of the injury, and that of the plaintiff is the remote cause.

It cannot be said that the decedent was in any way responsible for the predicament in which she found herself when the automobile overturned on the tracks. She was not driving the car, nor was she responsible for its operation. It does not appear that she had ever driven an automobile, or that she knew anything about operating one. She sat on the back seat, and, so far as the record shows, had no occasion, up to the time the car tipped over, to remonstrate with her brother for reckless driving. This is a death case, and the burden of showing contributory negligence rests upon the defendant. Had decedent known that the train was approaching, and that it was not going to stop before it struck her, she would have been unable to extricate herself from her hazardous position. She was absolutely helpless. We fail to see how it can be said that any neglect on her part was even remotely responsible for this unfortunate calamity. That being so, the theory upon which the case was submitted to the jury was an erroneous one. We must not be led astray by any talk of the doctrine of last clear chance. It confuses rather than helps the solution of our problem. However, it is doubtless true that in some particulars the charge was not harmful to the defendant.

Plaintiff's right to recover, therefore, must rest upon the ordinary rules of negligence.

Even though the decedent was not to blame for this accident, plaintiff must still prove, if this verdict is to be sustained, that the

railroad company failed to use that degree of care and caution which it was required to exercise under the existing circumstances. " In a negligence action the plaintiff always has the burden of showing failure by the defendant of some duty owing to the plaintiff. That burden can never be shifted to the defendant." (*Galbraith* v. *Busch*, 267 N. Y. 230.)

Our attention, therefore, must be directed to the operation of the train involved in this unfortunate accident. Did the engineer, in view of all the surrounding facts and circumstances, use reasonable effort to stop his train in time to prevent this casualty?

In answering this question a brief résumé of the evidence is essential.

The accident happened around five-eighteen A. M. The sun rose that morning at five-thirty-two. It was fairly light at the time, and the visibility was good, or at least the jury could have so found. The tracks at this point were straight for a distance of at least a mile to the south, from which direction the train was approaching. No train was in sight when the automobile was upset. The car lay on the tracks, with its top toward the approaching train, for five or six minutes before it was struck. The train was traveling sixty miles an hour. Both the engineer and fireman were in the cab, and looking ahead. The engineer commenced blowing the regular whistle when he reached the whistling post, approximately 1,400 feet from the crossing. When he was 1,000 or 700 feet away, he saw, for the first time, this black object on the track, and realized that it was stationary. He instantly applied the emergency brakes, and did everything in his power to stop the train, but was unable to do so until after he struck the automobile. We find no proof that the engineer wantonly or recklessly ran into the overturned car, or that he was indifferent or unconcerned over its plight after he realized that it was motionless and could not move, or that he did not do his full duty in watching the track ahead of him to keep himself advised of any possible danger, or in stopping his train as soon as the peril became apparent.

Under these circumstances we fail to see how it can be said that the defendant violated any duty which it owed plaintiff's intestate.

While defendant did not have the exclusive right to the use of the crossing in question, a traveler on the highway is required to watch out for and yield the right of way at such crossing to an approaching train. Defendant had the paramount and preeminent right of way. A proper signal of the approach of a train constituted notice to the public that the railroad company was about to use the crossing, and take advantage of its superior right so to do. (*Warner* v. *N. Y. C. R. R. Co.*, 44 N. Y. 465, 469, 470;

*Milliman* v. *N. Y. C. & H. R. R. R. Co.*, 109 App. Div. 139; *Caledonian Ins. Co.* v. *Erie R. R. Co.*, 219 id. 685, 688.)

The crossing was in the open country, and in a sparsely settled portion of the community. The law places no restriction upon the speed at which the defendant may operate its cars at this point, and the fact that the train was going sixty miles an hour did not charge the defendant with negligence, provided due and timely warning of the approach of the train was given. (*Warner* v. *N. Y. C. R. R. Co.*, 44 N. Y. 465, 469; *Phelps* v. *Erie R. R. Co.*, 134 App. Div. 729; *Hunt* v. *Fitchburg R. R. Co.*, 22 id. 212; *Orafina* v. *N. Y. State Railways*, 148 id. 417; *Goodrich* v. *Erie R. R. Co.*, 183 id. 189, 190; *Bassett* v. *Delaware & Hudson Co.*, 62 F. [2d] 74.)

The crossing signal was sounded, but it was unavailing, because decedent was in a helpless position, and no amount of warning that the train was approaching could have averted this accident.

While an engineer must be reasonably alert and watchful at highway crossings, he is not bound to keep his eye glued upon the road, or to stop his train the moment he sees something visible or tangible on the tracks. To borrow the words of Judge EARL in *Chrystal* v. *Troy & Boston Railroad Co.* (105 N. Y. 164, at p. 170), " He has the right, in broad daylight, when his train is perfectly visible and its approach must be heard and known, at least in the first instance, to assume that the object, whatever it is, will leave the track in time to escape injury."

This rule has uniformly been followed by the courts in this State. The engineer is not required to act until the peril first becomes apparent. (*Kawacz* v. *D., L. & W. R. R. Co.*, 259 N. Y. 166, 169; *Fierro* v. *N. Y. C. R. R. Co.*, 256 id. 446, 449; *O'Brien* v. *Erie R. R. Co.*, 210 id. 96, 100; *Harrington* v. *New York Central R. R. Co.*, 228 App. Div. 880; affd., 254 N. Y. 617; *Chrystal* v. *Troy & Boston R. R. Co.*, 105 id. 164; S. C., 124 id. 519; 141 id. 572; *Bragg* v. *Central N. E. R. Co.*, 228 id. 54, 57; *Southern R. Co.* v. *Gray*, 241 U. S. 333, 339; *Foley* v. *N. Y. C. & H. R. R. R. Co.*, 78 Hun, 248; *Stabenau* v. *Atlantic Ave. R. R. Co.*, 155 N. Y. 511, 514.)

It is true that in several of the cases last above cited the injured party was on the company's right of way, and could easily have avoided danger by stepping from the tracks and out of harm's way, while here the decedent was confined within the overturned car, which could not be moved in time to avoid the accident. But that fact does not change the rule as to the engineer's duty in the instant case. He was required to use appropriate effort to stay the progress of the train as soon as reasonable caution required him to discover that the object ahead of him was not going to leave the track, and not before; he could not wantonly or recklessly run

into the automobile. (*Albrecht* v. *Rochester, Syracuse & Eastern R. R. Co.*, 205 N. Y. 230, 235; *De Baur* v. *Lehigh Valley R. Co.*, 269 Fed. 964, 967.)

Even failure to exercise his best judgment in an effort to avoid the accident would not constitute negligence. (*Bittner* v. *Crosstown St. R. Co.*, 153 N. Y. 76; *Wynn* v. *Central Park, North & East River R. R. Co.*, 133 id. 575.)

It was the duty of the plaintiff to show that the train could have been stopped in time to avoid the collision after a reasonably alert and careful engineer should have appreciated the likelihood of a collision. (*Albrecht* v. *Rochester, Syracuse & Eastern R. R. Co.*, 205 N. Y. 230, 235.)

Plaintiff attempted to assume this burden. He called an expert, who testified that a train traveling sixty miles an hour, under the circumstances disclosed by this record, could be stopped in around 1,500 feet. There is no evidence to the contrary. The train involved in this accident was stopped in from 1,285 to 1,535 feet after the brakes were applied. It was between 1,000 and 700 feet from the crossing when the engineer discovered the overturned car, and the engine overran the crossing from 485 to 535 feet. The engineer made a most remarkable stop under all the circumstances. He left nothing undone to avoid this accident, after he discovered decedent's peril.

The engineer cannot be charged with negligence because he failed to discover the automobile on the tracks sooner than he actually saw it. While it was light at the time of the accident, the sun was not above the horizon, and objects were not as clearly visible as they would have been in the bright sunlight; the overturned car, with its top toward the approaching train, was a dark object which would not be readily discernible at any great distance; the engineer had a right to assume that a traveler on the highway would give heed to his warning signals, and would accord him the right, which the law gave him, to occupy the tracks at this point, and he had no occasion to suspect that a person would be penned in a car stranded on the tracks, and it would naturally take a few seconds for him to realize the situation, during all of which time the train was approaching at the rate of ninety feet a second; his mind was charged with the necessity of sounding the crossing whistle at the whistling post, and his attention was drawn to that duty. He was not bound to see the car before he actually did see it (*Bragg* v. *Central N. E. R. Co.*, 228 N. Y. 54, 57), nor was he reasonably bound to make an effort to stop his engine, even after he saw the object on the track, until and unless reasonable caution advised him that the car was helpless and could not get out of the way of the oncoming train.

But the plaintiff says that the engineer is an interested witness, and that his credibility is for the jury; that, as he was in the cab looking ahead as the engine came toward the crossing, the car must have been within his vision for some time, and the jury might say that he actually saw the automobile before he admits seeing it, and, if so, that he might possibly have realized that danger was imminent, and taken measures to avert it, which possibly might have been effective.

We fail to discover any evidence which casts doubt upon the engineer's testimony as to when he actually saw this car, and in view of the surrounding circumstances as already outlined, we do not think that an inference can properly be drawn from the evidence that he has misstated the fact. Besides, the plaintiff called the engineer to the stand in the first instance as his own witness. He thereby certified him as worthy of belief. (*Hanrahan* v. *New York Edison Co.*, 238 N. Y. 194, 197; *Potts* v. *Pardee*, 220 id. 431, 433; *Pollock* v. *Pollock*, 71 id. 137, 152; *Maher* v. *Benedict*, 123 App. Div. 579, 581; *Tryon* v. *Willbank*, 234 id. 335, 337, 338.)

The plaintiff, in our opinion, has failed to sustain the burden cast upon him of showing that the tragic death of his intestate was due to any negligence on the part of the railroad company.

In view of the conclusion already reached, we deem it unnecessary to discuss the claimed errors in the charge.

The judgment should be reversed, and the complaint dismissed.

All concur, except SEARS, P. J., and LEWIS, J., who dissent and vote for affirmance in an opinion by LEWIS, J. Present — SEARS, P. J., TAYLOR, EDGCOMB, CROSBY and LEWIS, JJ.

LEWIS, J. (dissenting). I am not in accord with the decision about to be made. The point where a railroad right of way crosses an improved highway at grade is a place where danger from traffic may be apprehended. (*Barnett* v. *New York Central R. R. Co.*, 227 App. Div. 636.) In this instance a five-passenger inclosed automobile was overturned upon defendant's north-bound track where it remained across the rails for at least five minutes before the accident and in such a position that its black top was toward the oncoming train. It thus presented to the view of a vigilant engineer a sizable black object, provided his vision was not obscured. Concededly the track south of the crossing was through open country; it was built upon a raised roadbed and was straight for several miles. The accident occurred at an early hour on a clear, August morning when visibility was reasonably good. There was testimony from several witnesses, some of whom were disinterested, from which the jury might have found that as one approached

from the south along defendant's track the crossing was visible for at least a mile. Upon the record of proof before us, I believe there was a question of fact for the jury whether defendant's engineer, in the exercise of reasonable care — which required of him both vigilance and alertness — should not have seen the imperiled object when his train was at a greater distance south of the crossing than the minimum distance in which it was proved the train could be stopped. Stated otherwise, it was a question of fact, under all the circumstances, whether the engineer should not have acted sooner in the presence of what he saw, or should have seen, before him.

SEARS, P. J., concurs.

Judgment reversed on the law, with costs, and complaint dismissed, with costs.