PECOS & NORTH TEXAS RAILWAY COMPANY v. MRS. LAURA SUITOR ET AL.

No.2562.   Decided February 18, 1920.

(218 S. W., 1034.)

**1.—Railway—Master and Servant—Flagman at Crossing—Negligent Operation of Engine.**

A railway company is required to operate its engines with ordinary care over street crossings with reference to the safety of a flagman in its employ and stationed there, though his duties required him to observe the movements of trains there for the protection of others. (Pp. 254, 255).

**2.—Same.**

Facts considered are held to support a finding of negligence by those operating a switch engine which ran down a flagman employed at a street crossing. (P. 255).

**3.—Same—Contributory Negligence.**

Facts attending the death of a railway flagman at a street crossing run down by a switch engine are considered and held not to present a case on which his contributory negligence could be pronounced as matter of law, but justifying submission of that question to the jury and sustaining their finding in his favor. (Pp. 255, 256).

**4.—Contributory Negligence—Damages—Charge.**

Refusal of a requested charge that damages could be reduced by reason of contributory negligence (Act of April 13, 1909, Laws 31st. Leg., p. 279) was not ground for reversal where the charge given was more favorable to defendant, denying all recovery in such case. (Pp. 256, 257).

Error to the Court of Civil Appeals for the Seventh District, in an appeal from Potter County.

Mrs. Suitor, joined by her children, sued the Railway Company for damages for the death of her husband. She recovered, and the

judgment was affirmed on appeal by defendant (153 S. W., 185) who then obtained writ of error.

*Terry, Caven & Mills, Madden, Trulove & Kimbrough,* and *F M. Ryburn,* for plaintiff in error.—The evidence wholly failed to show any alleged actionable negligence upon the part of the defendants. T. & P. Railway Co. v. Curlin, 36 S. W., 1003; M. & P. Oil Co. v. Burns, 96 Texas, 573; Mexican National Ry. Co. v. Crum, 25 S. W., 1126; Pledger v. T. C. Ry., 68 S. W., 517; M. K. & T. Ry. Co. v. Wylie, 26 S. W., 85; Railway Co. v. Malone, 37 S. W., 640; T. & P. Ry. Co. v. Bigham, 90 Texas, 223; G. H. & S. A. Ry. Co. v. Gormley, 91 Texas, 393; Farris v. Hoberg, 39 Am. St. Rep., 265.

The evidence shows conclusively that Suitor was negligent, and that his negligent act and conduct was the sole proximate cause of his death, without any concurring negligence upon the part of the defendant, or any of its employees. Gen. Laws, 1909, ch. 10, pp. 279, 280.

It was error for the trial court, in the absence of a charge properly presenting the issue, such issue being raised by the pleadings and the evidence, to refuse a special charge requested by defendant, and properly framed, presenting the issue of Suitor's negligence as compared to the alleged negligence of defendant's enginemen for the consideration of the jury in estimating the amount of recovery, and such error resulted in injury, as shown by the amount awarded by the verdict. Same authority.

*L. C. Barrett, Marvin Jones,* and *J. N. Browning,* for defendants in error.—The evidence was and is sufficient for the court to submit the cause to the jury which justified the court in refusing to instruct a verdict for appellant. Taft v. Ward, 124 S. W., 437; T. & N. O. Ry. v. Reed, 116 S. W., 69; M. K. & T. Ry. v. Goss, 72 S. W., 94; Railway Co. v. Boone 146 S. W., 533; F. W. & D. Ry. Co. v. Broomhead, 140 S. W., 820; Railway Co. v. Burnett, 108 S. W., 404; T. & P. Ry. Co. v. Watkins, 29 S. W., 232.

The court did not err in not granting a new trial because the evidence sustains the verdict of the jury. F. W. & D. C. v. Broomhead, 140 S. W., 820; Railway Co. v. Burnett, 108 S. W., 404; Howard v. Lumber Co., 134 S. W., 378; Railway Co. v. Smith, 28 S. W., 520; T. & P. Ry. Co. v. Watkins, 29 S. W., 232; Where flagmen were killed. M. K. & T. v. Goss, 72 S. W., 94; Railway Co. v. Reeves, 116 S. W., 69; Where switchmen were killed. Railway Co. v. Brock, 80 S. W., 422. Negligence shown by circumstances. Railway Co. v. Boone, 146 S. W., 533.

The contributory negligence of the plaintiff in a suit like this will not be presumed, but must be proven, which was not done in this case. Gurley v. S. A. & C. Ry. Co., 124 S. W., 502; Barnes

v. McCarthy, 132 S. W., 85; N. Y. C. v. Smith, 110 S. W., 774; F. W. & D. C. Ry. v. Broomhead, 140 S. W., 820; P. & N. T. Ry. v. Garver, 130 S. W., 58; Railway Co. v. Brock, 80 S. W., 422.

If any error was committed in the refusal of the special charge, it is not shown that it was harmful and an inspection of the entire record will show that it was harmless. L. A. & Tex. L. Co. v. Mayors, 94 S. W., 140.

Mr. Justice GREENWOOD delivered the opinion of the court.

This was an action by the widow and children of J. J. Suitor to recover damages of the Pecos & North Texas Railway Company for the death of J. J. Suitor while engaged in the Railway Company's service as a flagman.

The petition on which the case was tried alleged that Suitor's death was the proximate result of negligence on the part of employees of plaintiff in error in the operation of a switch engine which ran over Suitor, such negligence consisting, among other things, in failure to give any warning of the engine's movement over the crossing where Suitor was at work, in failure to discover Suitor in time to avoid striking him, and in failure to avoid his injury after discovering him in a perilous position.

There was evidence to establish the following facts: Suitor was employed to prevent injury to person or property, at the Railway Company's crossing at Tenth Street, in the city of Amarillo, by giving notice of the movement of the Railway Company's engines, cars, and trains. Tenth Street runs East and West, and is about forty-seven feet in width. It is crossed by two tracks of the Railway Company, eight or ten feet apart. Suitor was injured on the West track. Until about the time of his injury, the East track was occupied by a freight train, which extended across the street, and which blocked the progress of an automobile, which was West of the tracks, headed East. The driver of the automobile was waiting for the crossing to be cleared in order to move forward on Tenth Street. The freight train was in the act of moving, or was ready to move, when Suitor was injured; for the driver of the automobile went immediately to his aid, and, by the time he got to Suitor, the train had passed on. Suitor was run over by an engine with tender, which was backing from North of the crossing, where it had gone for water. The engine's switching crew included, in addition to the engineer and fireman, Mr. Iames, who was foreman, Mr. Lester, who was following the engine and Mr. Waggoner, who was working in the field. Messrs. Iames, Lester, Waggoner and Suitor carried lanterns. While backing the engineer saw three or four lanterns "out there at the Tenth Street crossing." About the time the engine reached the North side of the crossing, the fireman observed four men near the flagman's shanty, which stood on the West side of the tracks and some eight feet South of the crossing,

and he believed some of them were on the track, and he testified that he thought the four were fixing to get on the footboard at the end of the tender. The fireman did not pay very much attention to what these men with lanterns were doing when the engine started up from the North side of the track going down that way. They were sixty or seventy-five feet from him. Street lights were upon the crossing and the engine was equipped with headlights at each end. The engine barely came to a full stop at the North side of the crossing or did not stop at all after leaving the water tank. No warning was given, by blowing the whistle or ringing the bell, of the engine's approach, which was faster than usual. When the tender had gone a few feet beyond the South side of the crossing, Messrs. Iames, Lester and Waggoner stepped on the footboard and immediately turned around so as to face South. As foreman Iames turned, he saw Suitor within some eight feet of the engine, on the track near the West rail, with his back to the engine, and he at once called to Suitor and gave the engineer a stop signal, but Suitor was run over before the engine was stopped in about ten feet. Switchman Lester testified that the last he saw of Suitor before he got on the footboard he (Suitor), was standing in the street about five or six feet from the rails, between the automobiles standing in the middle of the street and his own shanty. The engine could have been stopped within one to three feet after the emergency brakes were applied.

Under the main charge and a special charge, requested by plaintiff in error, the jury were required, before returning a verdict against the Railway Company, to find, from the preponderance of the evidence, as follows:

1st. That Suitor received the injuries complained of while engaged in the performance of his duties to the Railway Company as flagman, and while exercising ordinary care: and, that he died as the proximate result of such injuries.

2nd. That an employee of the Railway Company, in charge of the switch engine, was negligent in the performance of his duties, and that such negligence was the producing cause of Suitor's death.

3rd. That the failure of the operators of the switch engine to discover the position of Suitor upon the track in time to prevent his injuries was negligence, and that such negligence, if any, was the proximate cause of Suitor's death.

The trial resulted in a verdict against the Railway Company, and the judgment thereon was affirmed by the Court of Civil Appeals. 153 S. W., 185.

The main questions presented here are whether the jury could fairly draw the inferences from the evidence that Suitor's injuries were the proximate result of negligence of another employee in

the engine's operation, and that Suitor was free of contributory negligence.

We cannot approve the contention, earnestly and strongly pressed, that because Suitor's duties required him to watch approaching engines and cars, the Company owed him no duty to exercise ordinary care to avoid striking him with an approaching engine or car. The flagman's duties require him to work on and over and around tracks, along which engines and trains are moving, and, the railway company which contracts for the performance of duties so inherently dangerous, is bound by every right consideration not to needlessly and carelessly expose the flagman to injury through failure to give such signal warnings, or through failure to keep such lookouts, or through failure to make such stops as ordinary care will dictate. The stated obligation or duty of the railway company is in no wise diminished by the duty of the flagman to observe moving engines or trains. The two duties, though coexistent, are separate.

The doctrine that such omissions as were shown in this case involve no breach of duty by a railway company to a flagman at a street crossing was rejected by the Court in denying a writ of error in the case of Missouri, K. & T. Ry. Co. of Texas v. Goss, 31 Texas Civ. App., 302, 72 S. W., 95. In that case, in discussing this question, the Dallas Court of Civil Appeals said: "Those in charge of the engine were not required to so operate the engine as to protect the flagman from dangers which he might have foreseen as being likely to arise in the ordinary and proper conduct of the company's business. With as much reason they should not have operated the engine, in such manner as to expose Goss to hazards not incident to the business when so conducted. The flagman had a right to assume that engines passing the crossing would be operated with the caution required under the circumstances and in accordance with the ordinance of the city and the rule of the company, and would be justified in acting on the assumption. The manner in which the engine in question was operated was not only negligence as to passersby, but was negligence as to the flagman, since it exposed him to unnecessary danger, which he ought not to have been expected to foresee and guard against. If the engine had been run at the proper speed he might have avoided injury, and if a switchman had been on the footboard the engine might have been stopped by the use of the angle-cock, or Goss warned of his danger in time to have escaped from the track. It is not unreasonable to attribute his death to the failure of the company in its duty to him, if he was not guilty of negligence which contributed to the loss of his life." See also International & G. N. & Mo. Pac. Ry. Cos. v. Gray, 65 Texas, 32; Murphy v. G. H. & N. R. R. Co., 100 Texas 495, 101 S. W., 439; Betchman v. Railway Co., 75 S. C.,

73, 55 S. E., 140; Smith v. South Pac. Co., 58 Ore., 22, 113 Pac., 44, Ann. Cases, 1913A, 434.

After careful consideration of the facts, we have concluded that the jury had a right to find that there was a failure on the part of those operating the engine to exercise ordinary care to prevent injury to Suitor.

The facts above recited warrant the inference that Suitor, having obtained the impression that the engine had stopped or was in the act of stopping at the North side of the crossing, started to go across the West track, in the discharge of his duties. The clearing of the East track, about to be accomplished, would likely require his going. They warrant the further inference that the fireman saw Suitor either on or approaching the track, under circumstances carrying notice of Suitor's purpose to go across. For, the fireman knew what work was required of Suitor, and he knew that the work would warrant Suitor's crossing the tracks, especially when a train, which had blockaded a crossing, was about to move out; and, the fireman knew that Suitor might rely on the engine not coming over the crossing without warning; and the fireman actually saw Suitor either when he was on the track or when he was coming on it. The engine was then at such distance from Suitor as to be easily stopped long before reaching him, and at such distance that a warning then sounded would have enabled Suitor to avoid the collision. The jury could disregard the fireman's testimony that he thought Suitor, as well as the switchman, would get on the footboard. The switchmen properly belonged on the footboard. Suitor belonged on the crossing, and across the tracks. For Suitor to ride on the footboard, while the engine and tender backed from Tenth Street, was for him to desert his station and his duties.

Being chargeable with notice of Suitor's purpose to cross the tracks, the fireman, instead of keeping a careful lookout on Suitor's movements, and instead of causing the engineer to stop or check the engine, "did not pay very much attention" to what Suitor was doing as the engine started towards him, and did not ring the bell as the engine moved down over the crossing and upon Suitor. Hence, the jury could quite properly find that Suitor's death proximately resulted from the fireman's negligence, either in failing to give due warning of the engine's approach, or in failing to discover Suitor's danger in time for his injury to have been averted. International & G. N. Ry. Co. v. Walters, 107 Texas, 277, 179 S. W., 856.

We think it was for the jury to determine whether Suitor exercised ordinary care for his own safety. It is insisted that he knew or was charged with knowledge of the engine's approach. The facts support the contrary inference that Suitor was ignorant of the engine's movement after it stopped North of the crossing, or after he

thought it stopped, until it was too late for him to step to safety. As said in the opinion of Judge Yantis in International & G. N. Ry. Co. v. Walters, 107 Texas, 377: "If they did not ring the bell or blow the whistle, as there was evidence to prove, this fact was some evidence that he was ignorant of their approach." Very strong evidence to negative knowledge by Suitor of the coming of the engine over the crossing is found in his own conduct. He seems to have been a normal, rational man, with such a man's instinct of self-preservation. Since such a man would not *knowingly* have placed himself in front of an approaching engine, the jury could reasonably conclude that Suitor was ignorant of the engine's approach. Suitor's duty, in no proper sense, required him to anticipate or know that the engine would suddenly back over the crossing, without warning and without due observation of his movements. His death resulted from the negligence inhering in those acts.

Under somewhat similar facts, a track laborer was held free of contributory negligence in the case of Egan v. Southern Pacific Co., 15 Cal. App., 770, 115 Pac., 940, the court saying: "Plaintiff being rightfully upon the track and in the performance of a duty enjoined upon him by the defendant in the exercise of an employment upon said track, had a right to assume that the train would not be backed down upon him without warning, and it should not be said that he contributed to his own injury in the doing of that which his employment required that he should do."

Therefore, we hold that the Railway Company was not entitled to a peremptory verdict and was not entitled to have the jury charged that Suitor was guilty of contributory negligence, as matter of law, and further that the verdict is sustained by the evidence.

A reversal is asked for the refusal by the trial court to instruct the jury, at plaintiff in error's request, that if they found that plaintiff in error was guilty of negligence proximately causing Suitor's death and also that Suitor was himself guilty of negligence proximately contributing thereto, then the damages should be reduced as provided by the Act of 1909, page 279.

The court in the charge given to the jury directed a verdict for the Railway Company, if the jury found Suitor guilty of contributory negligence. It thus appears that the court's charge was more favorable to the Railway Company than the charge which was refused. And, as held by the Supreme Court of the United States, in passing on the same question, when raised under the Federal Employer's Liability Act: "Of course, no prejudice could have resulted to the company from the instructions being more favorable to it than they should have been under the controlling law." Chicago, R. I. & P. Ry. Co. v. Wright, 239 U. S., 552.

The cases of El Paso Ry. Co. v. Shaklee, 138 S. W., 190, Galveston H. & S. A. Ry. Co. v. Averill, 136 S. W., 100; Atchison T. & S. F.

Ry. Co. v. Tack, 61 Texas Civ. App., 551, 130 S. W., 597, and Atchison T. & S. F. Ry. Co. v. Mills, 53 Texas Civ. App., 359, 116 S. W., 856, all decide that a charge in a suit for damages by an injured employee, which authorized an outright verdict, for the defendant employer, under the plea of contributory negligence, instead of a reduction of damages, if or when erroneous, could not prejudice any right of the defendant employer, and a writ of error was denied in each case.

Finding no reversible error, the judgments of the District Court and of the Court of Civil Appeals are affirmed.

*Affirmed.*