**BAKER et al. v. CROOMS et ux.** (No. 6726.)

(Court of Civil Appeals of Texas. Austin. March 12, 1924.)

**1. Master and servant ⬤⇒289(5)—Servant not contributorily negligent as matter of law because trespasser.**

That employee of railroad, having voluntarily turned aside from his line of duty, became a trespasser or licensee upon the railroad's track when hit by locomotive, *held* not to establish his contributory negligence as a matter of law.

**2. Negligence ⬤⇒136(8)—Question of law when act is undisputed.**

Negligence is generally question of fact and becomes one of law only when act done is undisputed or admitted or from which only one inference can be drown.

**3. Appeal and error ⬤⇒989—Where jury found no contributory negligence, appellate court's inquiry limited to whether evidence conclusively establishes defense.**

Where issue of contributory negligence is submitted and jury find against defendant, appellate court is limited to inquiry whether evidence conclusively establishes contributory negligence, and, where it does not, question is for jury.

**4. Negligence ⬤⇒122(1)—Defendant must prove contributory negligence.**

Burden is on defendant to prove contributory negligence.

**5. Master and servant ⬤⇒281(1)—Evidence held not to show contributory negligence of employee on tracks.**

Evidence *held* not to show contributory negligence of employee alleged to have voluntarily turned aside from duty of unloading cattle at stock pens and sat or laid down on main track, where he was killed by defendant's switch engine.

**6. Master and servant ⬤⇒265(14)—Presumed deceased employee was not voluntarily on tracks.**

In absence of showing that deceased employee voluntarily sat or laid down on main line track and fell asleep, it will be presumed that he, in exercise of ordinary care, knew danger of such act and did not voluntarily place himself thereon.

**7. Master and servant ⬤⇒286(31)—Question of lookout for persons on railroad track held for jury.**

Whether defendant's employees, knowing of plaintiffs' decedent's position near main line track in his work of unloading cattle from cars on side track, kept proper lookout for persons on main line track, *held* under evidence for jury.

**8. Appeal and error ⬤⇒1062(2)—Denial of submission of requested issue of proximate cause held harmless in view of finding of no contributory negligence.**

Jury finding that deceased employee was not guilty of contributory negligence rendered harmless refusal to submit defendant's requested issue whether deceased's negligence was proximate cause of his death rather than defendant's negligence.

**9. Trial ⬤⇒352(5)—Facts not grouped in special issue charge and submitted so as to call for general verdict.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1984a, defendant cannot group facts in special issue charges and so submit them as to call for general verdict.

Appeal from District Court, Williamson County; Cooper Sansom, Judge.

Action by London Crooms and wife against James A. Baker, receiver, and another. Judgment for plaintiffs, and defendants appeal. Affirmed.

Samuel B. Dabney, of Houston, and Taylor & Hale, of Waco, for appellants.

W. C. Wofford and Melasky & Moody, all of Taylor, for appellees.

### Statement.

BLAIR, J. London Crooms and wife, Nancy Crooms, instituted suit against James A. Baker, receiver of the International & Great Northern Railway Company, and the International-Great Northern Railway Company of Texas, for damages occasioned by the alleged negligence of appellants' employees in running a switch engine over and killing their son, Willie Crooms. Appellees based their recovery upon the alleged negligence of the operatives of appellants' switch engine, in failing to keep a proper lookout for their deceased son while operating a switch engine near to and adjacent to a track upon which he (deceased) was employed by appellants in unloading cattle from cars; and that the operatives of appellants' engine actually discovered the perilous position of deceased on the track in time to have averted the injuries resulting in his death, by the exercise of ordinary care.

Appellants answered by a general demurrer, special exceptions, and a general denial, and specially pleaded that the deceased, Willie Crooms, was guilty of contributory negligence in lying upon and falling asleep in a place of danger upon their main line track, directly causing his injuries which resulted in his death.

The case was tried to a jury, and upon their answers to certain special issues submitted to them, the court rendered judgment for appellees against appellants for $2,000.

Appellants have duly perfected their appeal from this judgment.

### Findings of Fact.

The special issues submitted and the answers of the jury thereto, upon which the court based its judgment, are as follows:

"Question No. 1. Did the servants, agents, and employees of the defendant use *ordinary*

care (as defined in this charge) to maintain a proper lookout for persons on the main line track while operating their switch engine under the circumstances and conditions attending the death of Willie Crooms?" To which the jury answered: "No."

"Question No. 2. Was the deceased, Willie Crooms, guilty of contributory negligence (as defined in this charge) in being on the main line track of defendants at the time he was killed?" To which the jury answered: "No."

"Question No. 3. Did the servants, agents, and employees of defendants promptly use all the means at hand to stop the switch engine after discovering the peril of the said Willie Crooms?" To which the jury answered: "Yes."

"Question No. 4. If you answer questions Nos. 1 or 3, 'No,' then state what amount, in dollars and cents, you find would reasonably compensate the plaintiffs for the loss of support, if any, suffered by them by reason of the death of their son, Willie Crooms." To which the jury answered: "$2,000.00."

"Question No. 6. If you answer question No. 1, 'No,' then answer this question: Was the failure, if any, on the part of the servants, agents, and employees of defendants to use ordinary care, the direct or proximate cause of the death of Willie Crooms?" To which the jury answered: "Yes."

Appropriate instructions of the law accompanied the special issues, and the evidence sufficiently sustains the findings of fact by the jury. In order to save a reiteration of the evidence, we do not here undertake to detail it, but will do so in our discussion of the questions presented by this appeal, as the principal attack upon the judgment rendered is that it is not supported by any evidence as a matter of law.

### Opinion.

Appellants' first contention against the judgment rendered is that the deceased was guilty under the evidence of contributory negligence as a matter of law, "in being upon and lying down upon, and in lying down and going to sleep upon, the main line track, and in carelessly and negligently exposing himself to danger"; and that the jury's verdict, finding deceased not guilty of contributory negligence, and the court's judgment on this issue, were clearly erroneous as against the undisputed evidence. We do not sustain this contention. We need not concern ourselves here with rights of the parties in a case where the question of comparative negligence between a railway company and an employee found to be guilty of contributory negligence is involved, as provided in article 6649, Revised Statutes, since the jury found deceased not guilty of contributory negligence. Railway v. Suitor, 110 Tex. 250, 218 S. W. 1034.

The testimony on this issue is as follows: Appellees' son, Willie Crooms, a negro man, about 31 years of age, strong and healthy, was employed by appellants, at the time he met his death, to assist in unloading nine cars of cattle from cars into the stockpen at Taylor, Tex. The deceased was not employed regularly by appellants, but was sent for when they had cattle to unload, as he "was very efficient in the unloading of cattle." He had been so employed for several years by appellants. The stockpen was in the city limits of Taylor, on a side track of appellants' railway. The inside rails of the side track on which the cars of cattle were standing at the stockpen and of the main line track paralleling it at the point at which deceased met his death were 9 feet and 3 inches apart. Deceased's duty in unloading the cattle was to stand in this space between these tracks, and with a "prodpole" 8 feet long punch the cattle and "holler" at them, and drive them out of the car on the other side from where he was standing, into the chutes to the stockpen. Sometimes he would have to hang upon the side of the car being unloaded and punch the cattle with his pole to get them out of the car. Engaged with him in unloading the cattle were five men on the switch engine in question, whose duty it was to attend the engine attached to the nine cars of cattle, and as the cars were unloaded to push others to the chutes of the stockpen to be unloaded. There were only two chutes to the stockpen, and only two cars could be placed and unloaded at the same time. Two or three others besides deceased were engaged in actually unloading the cattle, either on top of the cars or about the chute, but no one was on the ground with deceased. When the eighth car had been unloaded, the switch engine in question placed the ninth and last car to be unloaded at the chute, and immediately uncoupled to go elsewhere in pursuit of their employment. Deceased helped to unload the eight cars. One witness stated it:

"He was wide awake enough to help unload these cattle and squeal at the top of his voice and punch them out."

At the time or immediately before the ninth car was spotted to be unloaded, the foreman in charge of actually unloading the cars called to deceased, but he did not respond. The switch engine backed away from the cars about three or more car lengths to a switch which was thrown, permitting the engine to pass to the main line track and down it at the rate of 6 or 8 miles per hour, about 115 feet to a place just opposite where the ninth car of cattle was spotted, and at this point it ran over deceased, who was lying on the track of the main line. The engine foreman and the "pin-pulling" or "coupling" brakeman were standing on the front of the engine and saw an object on the track soon after the engine came on the main line, but thought it was a piece of paper until they got within 15 feet of deceased, when they discovered it was a man. The "washout" or danger signal was given, and all methods were employed by the engine's

operatives to stop it, but they were unable to do so until the pony or small trucks on the front of the engine and one big driver had passed over deceased's body killing him instantly. The pole with which he punched the cattle was cut in two pieces by the engine. The engineer and fireman state that they did not see deceased lying on the track before he was run over. Neither of them looked down the track all the time; that the headlights were good, and an object could be seen from 50 to 125 feet or even further on the track, if one should look; and the track in question was straight and unobstructed.

The employees on the front of the engine stated that their position in front of the headlight hindered them from seeing and recognizing an object as far and as readily as the fireman and engineer could, because of the latter's higher position behind the headlight. No one saw deceased go upon the track, or how he got there. He was lying on his back across the rail of the main line track next to the cars of cattle. The rail across which he was lying struck him about the lower part of his ribs, and the wheels of the engine passed over his body just at the lower part of his ribs. Deceased never moved from the position he was first seen in on the track until the engine passed over him. He made no outcry when struck; nor did he groan or give any evidence of life after being run over, except slight movements of the body. The time elapsing between the time deceased was known to be engaged in unloading the eighth car and the time he was run over was very short. The eight cars had been unloaded on an average of about five minutes per car, including the time employed in spotting the cars at the chutes. The door of the ninth car which had just been placed by the engine at the chute was being opened preparatory to unloading the cattle when deceased was run over. No one attempted to fix the time elapsing since deceased was last heard and the time he was run over, but all fixed it as very short. Deceased complained of being very tired and sleepy on this night, having been up late for several nights; and he was described by one witness as being a sleepy or a kind of slow negro. This same witness also testified concerning the deceased as follows:

"This negro Crooms was very efficient in the unloading of cattle; he was a good man for such jobs as that. Whenever we had cattle to unload, they generally sent for him. He was wide awake enough to help unload these cattle and squeal at the top of his voice and punch them out. * * * That Crooms helped unload eight or nine cars of cattle. * * * That we just barely had the door of the ninth car open to unload it when the engine stopped. * * * I don't know just how long it was after Gillespie called him before the ninth car was spotted; it was a short time. We had not gotten any of the cattle out of the ninth car when I heard the engine stop on the main line.

Crooms worked all the way through the unloading of the eighth car."

[1] Appellants insist that under this proof it is conclusive that deceased, a tired and sleepy-headed negro, voluntarily turned aside from his line of duty, sat down or lay down upon the main line track, knowing the imminent danger thereof, and thereby became a trespasser and guilty of contributory negligence as a matter of law. We think it immaterial, under the decisions of the Supreme Court on this issue of contributory negligence, whether deceased was a trespasser or a licensee on appellants' track at the time of his death. The true rule was announced in Tex. & P. Ry. Co. v. Watkins, 88 Tex. 24, 29 S. W. 233, to be:

"That it is the duty of the servants of the railroad company operating its trains to use reasonable care and caution to discover persons on its track, and a failure to use such care and caution is negligence on the part of such company, for which it is liable in damages for an injury resulting from such negligence, unless such liability is defeated by the contributory negligence of the person injured, or of the person seeking to recover for such injury, and the circumstances under which the party injured went upon the track are merely evidence upon the issue of contributory negligence. If such circumstances show that the party injured was a wrongdoer or trespasser at the time of the injury, the issue of contributory negligence is, as a general rule, established as a 'matter of law; but not so in all cases.

"It results from the above, that it was the duty of the railroad to use ordinary or reasonable care to discover and warn defendant in error, whether she be considered a trespasser or a mere licensee, and a failure to use such care was negligence, rendering the railroad liable for such damages as resulted therefrom, unless under all the circumstances defendant in error was guilty of negligence contributing proximately to her injury."

This rule has been regarded "as wise and salutary" by the Supreme Court in the case of St. L. S. W. Ry. Co. v. Watts, 110 Tex. 113, 216 S. W. 391, quoting the above from Railway Co. v. Watkins, supra, and citing H. & T. C. Ry. Co. v. Sympkins, 54 Tex. 618, 38 Am. Rep. 632, and Galveston City Ry. Co. v. Hewitt, 67 Tex. 479, 3 S. W. 705, 60 Am. Rep. 32.

[2] Negligence of either the plaintiff or the defendant is generally a question of fact, and becomes one of law only when the act done is undisputed or admitted, or from which only one inference can be drawn. Choate v. S. A. & A. P. Ry., 90 Tex. 88, 36 S. W. 247, 37 S. W. 319.

[3] Where the issue of contributory negligence is submitted to the jury and they find against the defendant, the power of an appellate court is limited to the inquiry whether or not the evidence conclusively established contributory negligence, and where it does not the question is one for

the jury. Railway Co. v. Matthews, 100 Tex. 68, 93 S. W. 1068.

[4] The burden of proof was upon appellants to prove the issue of contributory negligence. Unless under all the circumstances deceased was guilty of contributory negligence proximately causing his injury, appellants are liable. Railway Co. v. Watts, supra, and Railway v. Watkins, supra.

[5, 6] We think the evidence amply sufficient to support the findings of the jury that deceased was not guilty of contributory negligence in being upon the track at the time he met his death under all the circumstances of this case. In absence of a showing that deceased voluntarily sat or laid down upon the main line track and fell asleep, it will be presumed that he, in the exercise of ordinary care, knew the danger of such act, and did not voluntarily place himself upon the track. Railway Co. v. Longino, 54 Tex. Civ. App. 87, 118 S. W. 198; Railway Co. v. Crowder, 25 Tex. Civ. App. 536, 64 S. W. 90, in which a writ of error was refused. The circumstances attendant upon the death of Crooms certainly authorized the jury to deduce therefrom that he did not voluntarily place himself upon the track, but that he either fell or was thrown there by some cause over which he had no control. They could reasonably have concluded that the time elapsing between the time he was actually engaged in unloading the eighth car and the time his foreman called to him without getting a response, and the time he was run over, was so short that he could not reasonably have gone so sound asleep that the call or the noise of the engine would not have aroused him, thus indicating that he had been rendered unconscious. They could have concluded that his physical position on the track, lying on his back across the rail, was such that was unusual for one taking repose to assume, and that he came in such position by a fall rendering him unconscious. They could have concluded from the fact that he never moved or gave any outcry when the engine passed over him, and from the fact that only slight movements were in his body after being run over, that he was unconscious at the time he met his death. The fact that only about 9 feet of space was between the side track and the main line track where he had to work, and taking into consideration the fact of the overhang of the cattle car of about 2 feet, leaving a space of only about 7 feet to handle an 8-foot prodpole, is a circumstance which the jury might take into consideration in determining and deducing from such circumstances the opportunity for deceased to have met with an accident rendering him unconscious, knowing that a kick or knock upon the prodpole by the cattle could have unbalanced him, causing him to fall in the position he was lying upon the track at the time he met his death.

[7] Another complaint against the judgment is that the trial court erred in submitting to the jury for their finding of fact question No. 1, relating to the failure of appellants' employees in charge of the engine to keep a proper lookout for persons on the main line track, under the circumstances and conditions attending the death of Crooms. They also complain that the jury's verdict is against the undisputed evidence on this issue, and, that the undisputed evidence showed those in charge of the engine owed no duty and were under no obligation to keep a lookout for Crooms. We are of the opinion that the evidence sustains the jury's verdict upon this issue. The undisputed facts show that the operatives of appellants' engine knew of deceased's position near the track on which he was killed, as well as others there employed. They knew from several years' experience of the close proximity deceased was compelled to work in the line of his duty unloading cattle to the track on which they were operating the engine. Both the fireman and engineer admit that they did not keep a lookout during all the time they were approaching the point where appellees' deceased was killed, and that they never saw him until the engine had passed over him and stopped. The point here raised has been so long and so often decided against the contention of appellants that it really needs no citation of authorities to sustain our holding. In the early case of Railway Co. v. Sympkins, 54 Tex. 615, 38 Am. Rep. 632, the Supreme Court, speaking through Justice Gould, said:

"If the engineer on the approaching train keep that lookout which is required of him at all times, not only to secure the safety of the train, but to avoid injury to any animal or person on the track, this person lying there in open view must be discovered. Not to discover him is, under the circumstances, negligence, and that negligence is the proximate cause of the injury; whilst the negligence of the party in going on the track is only a remote cause. * * *

"In our opinion, there is a distinction between the duty devolving on the owners of land on which there is a dangerous excavation, and that devolving on a corporation invested by law with the extraordinary power of traversing the country with huge cars, whose progress everywhere is necessarily attended with danger. They who place such dangerous machines in motion, should, we think, be required to take precautions against their injuring any one who may happen to be in their pathway. 'The care in conducting any business should be proportionate to its dangerous motion.' Gorman v. Pac. R. R. Co., 26 Mo. 448. The extent of the precautions required of a railroad company depends on all the circumstances. The regulations of railroads exact watchfulness of the engineers, and this rule should operate for the benefit of the public as well as the company.

"Authorities are not lacking in support of the position that a 'reasonable lookout,' varying according to the danger, and all the surrounding

circumstances, is a duty always devolving on those in charge. of a railroad train in motion."

. This rule has been followed and cited in many cases· in this state, and is without doubt the established law, and under the facts and circumstances of this case appellants' employees engaged in the operation of the engine at the time they ran over deceased must have, under this rule, discovered him. Railway Co. v. Watkins, 88 Tex. 20, 29 S. W. 233; Railway ·Co. v Turner (Tex. Civ. App.) 92 S. W 1074; Railway Co. v. Watts, 110 Tex. 106, 216 S. W. 391.

[8] Appellants' other complaint, that the trial court erred in failing to give its special charge No. 8, is not sustained. This requested charge, omitting the formal parts, is as follows:

"Was the action of the deceased, Willie Crooms. in going upon the track of the main line or in lying upon or falling to sleep upon the track of the main line, if he did any of these things, the direct and proximate cause of his injury and death, rather than any act of negligence on the part of the defendants, or the servants, agents, or employees of the defendants?"

[9] Appellants' specific complaint is that the issue submitted by the court on contributory negligence only submitted the one question of whether deceased was negligent in being upon the track; whereas, the requested charge grouped three separate and distinct issues of negligence on the part of deceased in being upon the track proximately resulting in his injury, which issues it is insisted by appellants they had the right to group and submit to the jury in an affirmative way. Aside from the question of the right to have such issues submitted as grouped and presented, the fact that the jury found deceased not guilty of contributory negligence renders unnecessary or harmless a finding upon this issue of proximate cause as requested. But as a matter of law appellants were not entitled to have the requested charge as presented submitted.

A railway company pleading contributory negligence on the part of a party injured suing it has the right to have an issue submitting separately and affirmatively each fact or group of facts pleaded and proved to constitute such contributory negligence, whether the case is submitted to the jury on a general or special issue charge; but it is not entitled to group the facts in special issue charges and so submit them as to call for a general verdict. Vernon's Sayles' Ann. Civ. St. 1914, art. 1984a; Fox v. Dallas Hotel, 111 Tex. 475, 240 S. W. 517; Railway ·Co. v. Harrington (Tex. Com. App.) 235 S. W. 188.

Just what finding of the jury appellants sought by this requested issue is not clear. The jury were not asked to find from this group of facts if deceased was guilt⸗ of contributory negligence in being upon the track at the time he met his death, but to find if this group of facts constituted the proximate cause of his death "rather than" or ·instead of any act of negligence on the part of appellants. If the jury should have answered "yes" to the question, it would have been equivalent to a finding that these acts on the part of deceased constituted the proximate cause of his injury and death and that none of the alleged acts of negligence on the part of appellants were the proximate cause, which finding would have been tantamount to a general verdict that appellants were not liable because their acts of negligence were not the proximate cause of the injury and death of Crooms; or if they had answered "no" to the question, it would have been equivalent to a general verdict that the acts of negligence as pleaded and proved by appellees were the proximate cause of the injury ·and death of Crooms, and that they were therefore liable. The requested issue in this case and the ones in the Harrington Case, supra, are very similar, and we think the rule announced in the above-cited cases clearly applies in this case.

We find no error in the judgment, and it is therefore affirmed.

Affirmed.