PAYNE v. ILLINOIS CENT. R. CO.

(Circuit Court of Appeals, Sixth Circuit.   June 15, 1907.)

No. 1,627.

1. CARRIERS—PASSENGERS—TERMINATION OF RELATION.

   A passenger on a railroad train alighted in the night at the town where he resided. The station, the town, and his home were all on the west side of the track, and the doors of the cars, which were vestibuled, were opened on that side. After his train had departed, he was killed by another train on a track to the eastward. *Held*, that he had ceased to be a passenger prior to his death, and the company at that time owed no duty to him as such.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 991–993.

   Continuance of passenger relation, see note to Chesapeake & O. Ry. Co. v. King, 40 C. C. A. 437.]

2. DEATH—ACTION FOR WRONGFUL DEATH—QUESTIONS FOR JURY.

   To justify the submission to the jury of a case brought to recover for the death of a person, alleged to have been caused by the negligence of defendant, there must be substantive proof not only of such negligence, but that it brought about the injury.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Death, § 141.]

3. SAME—DEATH OF PERSON ON RAILROAD TRACK—EVIDENCE OF NEGLIGENCE.

   In an action for wrongful death, it was shown that deceased was a passenger on a vestibule train on defendant's railroad, and alighted therefrom at night at the town where he resided. The station, town, and the home of deceased were all on the west side of the track, and the

doors of the train were opened on that side. On a side track to the eastward of the main track, a freight train was standing waiting for the passenger train to pass. After the latter had gone, the freight started, but a coupling broke, and the cars were separated some 30 feet before the front portion stopped, standing across a private crossing. The conductor and a flagman went back to the caboose with a lantern for a knuckle, walking along the west side of the cars. After the front part of the train had been backed up and coupled, the conductor passed forward to the engine on the same side of the cars, when he discovered the body of the deceased lying near the private crossing, on its back, with the feet to the west, and the head on the west rail, where it had been crushed by the wheels evidently when the cars were backed. There were no other injuries, and the clothing was not disarranged. The side track at the place of the injury was being moved, and the earth had been removed from between the ties, and it was unlighted. *Held*, that such facts would not warrant a finding that the death was due to such condition of the track, where all the evidence tended to show that the case was one of suicide, and, in any event, that deceased was a trespasser and guilty of such contributory negligence as to preclude a recovery.

4. RAILROADS—OPERATION—STATUTORY REGULATIONS—TENNESSEE STATUTE.

Shannon's Code Tenn. § 1574, subsec. 4, which requires every railroad company to keep some person on the locomotive always on the lookout ahead and to sound the whistle, apply the brakes, and employ every means to stop the train when any person, animal, or other obstruction appears upon the road, does not apply to a train which became uncoupled on a side track in depot grounds and was backing up to recouple.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 747.]

In Error to the Circuit Court of the United States for the Western District of Tennessee.

K. D. McKellar, for plaintiff in error.

Charles N. Burch, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This action was brought by the plaintiff to recover for the wrongful death of her husband, George Payne, who was run over and killed on the night of February 2, 1904, by a portion of a freight train of the Illinois Central Railroad Company, in the depot grounds at Dyersburg, Tenn. Payne lived in Dyersburg. Between 10 and 11 o'clock that night he arrived there from Paducah, Ky., on a vestibuled passenger train. A short time afterwards he was found dead on the side or passing track, then in use by a freight train bound north, which had been waiting for the south-bound passenger train, and was expecting to leave as soon as it arrived. Payne was killed by one of the portions of this freight train while being coupled together. The question raised below, and the only one in the case, is whether the proofs presented a case for recovery. The defendant submitted that no negligence on its part causing the accident was shown. This the court held and directed a verdict for the railroad company. Was the court correct in so holding?

The passenger train which Payne took reached Dyersburg between 10 and 11 o'clock that night. He was seen on the train, but no one observed him leave it. The train was vestibuled, and was going south. After the usual custom, the vestibules were opened on the west side. The station was located on the west side of the main track, and

so was the town and the home of the deceased. Payne was well acquainted with the town, had lived there for 18 years, was accustomed to railroad travel, and there was no occasion, so far as any one knew, for him to leave the train, except in the usual way, on the west side. When Payne arrived at the depot in Dyersburg that night, there was in the depot grounds, in addition to the main track, a side or passing track which lay to the east of the main track. Later the main track and the passing track were made into a double track. At the time of the accident there was a cut-off or switch connecting these two tracks, which was in process of removal; the gravel and dirt being taken out from between the ties.

The depot at Dyersburg was located between two crossings; the one on the south being a public crossing, and the one on the north a private crossing, used by persons having freight business with the railroad company. At the time the south-bound passenger train arrived at Dyersburg, a north-bound freight train was standing on the side or passing track, waiting for the passenger train to get out of the way. This freight train pulled into Dyersburg from the south at about 8 o'clock. It consisted of 28 or 30 freight cars. After its arrival, it was cut in two, leaving the rear cars south of the public crossing and the front cars (about 20 of them) north of it. This was done to permit the use of the public crossing. The private crossing to the north remained blocked by the cars which composed the front end of the freight train. Before the passenger train arrived, however, the front end of the freight had been backed and coupled to the rear cars, so the freight train was ready to pull out when the passenger train should leave. The freight train did not, however, start north until the passenger train left. When it started north, it had gone only about 30 feet, when, by the breaking of a knuckle, it became uncoupled and parted about five or six car lengths south of the private crossing. The train being equipped with air brakes, which operated automatically, the rear cars were separated from the front not more than 30 feet. When the conductor discovered that the train had parted, he went back to the caboose for a knuckle. To get there he went along the west side of the passing track. He had his lantern and went by the point where Payne's body was subsequently found. So did the flagman, but neither saw a body. After securing a new knuckle in the caboose, the signal was given to the engineer to back. The cars composing the front end of the train were run slowly over the intervening space and the coupling effected. The conductor then proceeded north on foot to get to the engine and discovered Payne's body on the track, about two feet south of the private crossing. He had, in all probability, been run over when the front end of the train was backing in order to couple to the cars in the rear. The body was lying on the back, the head on the west rail of the east or passing track, and the body perpendicular to that track, stretching out toward the main track; the right hand was alongside the head, and was nearly severed, while the left hand was straight down alongside the body. The clothes were clean, there was no indication that the body had been rolled or dragged. The wheel had apparently passed over the mouth, and the lower part of the face was mashed to a pulp. There were no other injuries.

The negligence charged against the railroad company was: First, in negligently killing Payne when he was still a passenger, and when the company was under obligation to exercise a very high degree of care towards him; second, in negligently leaving a portion of the passing track, where the cut-off switch was located, unguarded and unlighted, when in a torn-up condition; and, third, in not taking the statutory precautions required by the law of Tennessee, when Payne was encountered as an obstacle on the track.

With respect to the first claim, it may be observed that the depot and the town were both on the west side of the track. The vestibules of the coaches were opened for passengers to alight on that side. The presumption is that Payne alighted on that side, and there is no evidence to the contrary. After thus alighting from the train, with a straight and unimpeded way into the town, and to his home, Payne ceased to be a passenger. No reason is given in the testimony, no explanation is offered, which would justify him either in alighting on the east side of the vestibuled train, or in crossing the west track and attempting to cross the passing track. When he was run over and killed on the passing track, his own train had pulled out and gone south, and his relation to it as passenger had long ceased.

The claim that the company was negligent in leaving the torn-up, cut-off track unlighted and unguarded is based, of course, upon the supposition that Payne stumbled and fell because of that condition, and was caught and run over by the freight train. This is pure conjecture. There is no proof whatever tending to support it; and there must be substantive proof not only that the defendant was negligent, but that the negligence brought about the injury, in order to justify the submission of the case to the jury. Looney v. Metropolitan R. R. Co., 200 U. S. 480, 26 Sup. Ct. 303, 50 L. Ed. 564; Carnegie Steel Co. v. Byers (C. C. A.) 149 Fed. 667; Moit v. Ill. Central R. R. Co., 153 Fed. 354.

The theory that Payne stumbled in the dark because of the torn-up track, and fell under the freight train, is not only without any support in the evidence, but refuted by it. The position of the body, the nature of the injuries, and the condition of his clothes, all indicate conclusively that he was not run down or dragged; but that he deliberately lay down with his head on the track. Payne had been a saloonist for many years and had lost his job by Dyersburg "going dry" the preceding summer. He had been suffering from the grip and was out of employment. He had been on an unsuccessful hunt for a job, and while away from home had talked and acted in a peculiar manner. He was identified by his cuffs, which were in his overcoat pocket. He had taken the precaution to write his name in pencil on them. The court cannot permit a jury to guess that in some way or other the death of a person was brought about by negligence, when the evidence all points to suicide. Payne never stumbled over the torn-up, cut-off track. He never started to cross it. He had no reason to, and no design. The crossing there was private. It was blocked. His purpose ended with the nearest rail and the crushing wheels soon to pass over it.

The final point made by the plaintiff was that the railroad company omitted the statutory precautions it should have taken. But no stat-

utory precautions were demanded under the circumstances. Subsection 4 of section 1574, Shannon's Code, provides as follows:

"Every railroad company shall keep the engineer, fireman or some other person upon the locomotive always upon the lookout ahead; and when any person, animal or other obstruction appears upon the road the alarm whistle shall be sounded, the brakes put down and every possible means employed to stop the train and prevent an accident."

Our understanding is that the statute does not apply, and the precautions are not required, where the train is being made up in the depot grounds, as this one was. The movement which injured Payne was the slow backing movement preliminary to the final coupling up of the separated portions of the train. Cox v. L. & N. R. R. Co., 1 Shannon, Tenn. Cases, 475; Rogers v. R. R. Co., 136 Fed. 573, 69 C. C. A. 321; R. R. Co. v. Pugh, 95 Tenn. 419, 32 S. W. 311.

But if Payne did not deliberately lie down upon the track, he was guilty of such negligence in attempting to cross the passing track when blocked and in use by a freight train then being made up, as to plainly preclude a recovery. Under the circumstances, he was an intruder and trespasser. Besides, Payne was in a part of the station grounds where a passenger had no right to be, and the railroad company owed him no duty of precaution, unless his presence in that place was known to its employés, and this is not claimed.

Judgment affirmed.