## DAHLEN v. HINES, Director General of Railroads.

(Circuit Court of Appeals, Seventh Circuit. June 25, 1921.)

No. 2888.

1. **Master and servant ⊂⊃286(32)—Negligence as to air inspector held for jury.**

   In an action by an air inspector injured when 16 loaded cars were shunted at great speed down grade against the cars which he was inspecting, whether defendant railroad was guilty of negligence *held* for the jury.

2. **Master and servant ⊂⊃289(35)—Existence of blue signal rule held question for jury.**

   The question whether a rule requiring blue signals to indicate the presence of workmen under or about cars was in force at the time of injury to plaintiff air inspector *held* one for the jury on evidence of abandonment or modification by custom.

3. **Negligence ⊂⊃101—Contributory negligence of railroad employee reduces recovery.**

   Contributory negligence of employee of a railroad does not bar recovery for injuries occasioned by railroad's negligence, but simply reduces the damages.

4. **Master and servant ⊂⊃285(11), 289(39)—Proximate cause of injury to inspector omitting blue signal held for jury.**

   In an action by an inspector for injuries received when working between cars against which loaded cars were shunted, whether plaintiff's disobedience of a rule requiring blue signals or the negligence of the railroad was the proximate cause of the injury *held* for the jury.

In Error to the District Court of the United States for the Eastern District of Wisconsin.

Action by Edward Dahlen against Walker D. Hines, Director General of Railroads. Judgment for defendant, and plaintiff brings error. Reversed, with directions to grant new trial.

See, also, 267 Fed. 926.

Henry Mahoney and Irving A. Fish, both of Milwaukee, Wis., for plaintiff in error.

C. H. Van Alstine and Henry J. Killilea, both of Milwaukee, Wis., for defendant in error.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

EVAN A. EVANS, Circuit Judge. The determination of the questions raised by this writ of error necessitates an examination of the facts

to ascertain whether there was any evidence that required defendant's liability be submitted to a jury. The testimony, viewed most favorably from plaintiff's standpoint, supports this statement:

Plaintiff, an air inspector in the Milwaukee terminal of defendant company, on May 29, 1919, while inspecting the air hose connections on a train of cars which had been examined and repaired, and occupied the track used only by cars about to "go out," and which were ready for service, found the hose uncoupled. He paused to look up and down the train, and, seeing no moving cars at either end thereof, stepped between the two cars, picked up the ends of the hose, and connected them. They, however, fell apart, whereupon he examined the gaskets, and, finding them satisfactory, he stooped down again to connect them, when a sudden movement of the cars, following a crash, knocked him over. He seized the hose and was dragged some distance, but his feet avoided the wheels. He pulled himself up, when a second crash resulted in a second fall, and this time one foot was thrown over the rail, and the loss of a leg resulted.

The cause of the unexpected crash was another train of 16 loaded cars coming down the track at a rapid speed in charge of one brakeman, who was unable to control them, due to the momentum and the grade. There is testimony to the effect that these cars were moving at the rate of 15 miles per hour when they crashed into the standing cars, which plaintiff was inspecting, whereas 2 miles per hour was the usual and ordinary speed at which such cars were moved.

On July 1, 1918, defendant adopted what was called the Standard Code of Train Rules, among them being rule 26, which reads:

"A blue signal, displayed at one or both ends of an engine, car, or train, indicates that workmen are under or about it; when thus protected, it must not be coupled to or moved. Workmen will display the blue signals, and the same workmen are alone authorized to remove them. Other cars must not be placed on the same track, so as to intercept the view of the blue signals, without first notifying the workmen."

Another rule, announced May 15, 1918, reads:

"This rule will apply to all repair tracks, and car foremen are hereby instructed to keep a blue flag or blue lantern on the main track end of the first car on repair track at all times, except to permit switching."

Rule 26 was not followed by the employees (in fact, there is evidence that it was totally ignored in these yards) until January 22, 1919, when defendant secured from all employees, including plaintiff, a written acknowledgment that rule 26 was understood. Thereafter, for several days, blue flags were "put out" on incoming and outgoing trains, when they were being inspected by car and air inspectors. This construction of the rule resulted in a "tie-up" of the yards, and much delay in making up trains was experienced. Employees, including plaintiff, were thereupon instructed by the yards foreman not to use flags when inspecting outgoing trains. Thereafter car and air inspectors did not use the blue flags when inspecting cars on outgoing trains. This practice continued until the accident, and was known to and sanctioned by the three yards foremen and the chief inspector, and was

either known or chargeable knowledge given to the general supervisor of the freight department and others.

[1] The foregoing facts would, we have no hesitancy in saying, have supported a finding of negligence in shunting the train of 16 loaded cars down grade along this track at the rate of speed described by certain witnesses. It can hardly be successfully contended that ordinary care was disclosed when 16 loaded cars disconnected from the engine were shunted down a track at a rate of speed seven times what competent witnesses declared was the usual rate of speed—at such a rate of speed that the brakeman was unable to check or control the train—at such a rate of speed that, notwithstanding the brakeman's efforts, the moving cars struck the standing cars with such force as to "drive in" and "break off" drawbars. We are not required to say that, under all the evidence, this was negligent conduct as a matter of law, but merely to determine whether a jury question was presented.

[2] Nor could the court say, as a matter of law, that rule 26 was in force at the time of the injury. Perhaps the jury, from all the evidence, might have so found; but the most favorable ruling the defendant was entitled to receive called for a submission of the question to the jury. The evidence above referred to, if believed by the jury, entirely eliminated rule 26 from the case, either on the theory of abandonment or waiver or modification by custom.

[3, 4] Moreover, if rule 26 were applicable, it would only establish plaintiff's contributory negligence, which of itself would not bar recovery, but simply reduce the amount of the judgment. But counsel for defendant urge that, while plaintiff's contributory negligence as such would not defeat the action (negligence appearing), yet if, as in this case, the plaintiff's contributory negligence was the proximate cause, then liability is avoided. This position assumes, of course, the unqualified and unlimited application of rule 26. Rejecting this premise, it is impossible for us to accept the conclusion that failure to comply with the rule was the proximate cause of the injury. Without discussing the evidence further, we might add that in our opinion, even though rule 26 applied, the question of proximate cause was nevertheless a jury question. Union Pacific R. R. Co. v. Hadley, 246 U. S. 330, 38 Sup. Ct. 318, 62 L. Ed. 751.

The judgment is reversed, with directions to grant a new trial.