**SEARS et al. v. TEXAS & N. O. RY. CO.**
(Nos. 445–3934.)

(Commission of Appeals of Texas, Section B. Nov. 26, 1924.)

**I. Commerce ☞27(5)—Action for death of flagman employed in interstate commerce, held within federal Employers' Liability Act.**

Petition stating cause of action in favor of personal representative of flagman, employed in interstate commerce to protect trains engaged · therein, *held* within federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665).

**2. Railroads ☞369(3) — Reasonable care to discover persons on track required.**

Railroad owes to any one on its track including a trespasser, duty of reasonable care to discover his danger and is liable for injury resulting from breach thereof, unless contributory negligence defeats recovery.

**3. Commerce ☞8(6)—Obligations of employers under federal act determined by act and application thereof by federal courts.**

In action under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), rights and obligations involved are determined by that act, and common law, as interpreted and applied in federal courts, where at variance with state court decisions.

**4. Master and servant ☞137(4) — Railroad owes no duty, except in event of discovered peril, to trespassers on tracks.**

Under U. S. Comp. St. §§ 8657, 8660, railroad owes to person lawfully on tracks duty to avoid injuring him, but· it owes no duty, except in event of discovered peril, to one making improper or unlawful use of roadbed, and not reasonably to be expected to be there.

**5. Master and servant ☞137(4) — Railroad owed no duty to look out for brakeman sleeping on track.**

Railroad was under no duty to maintain lookout for brakeman, sent out to signal and stop train, and who, without lawful excuse, went to sleep on or dangerously near track.

**6. Master and servant ☞137(4)—Refusal to submit issue as to railroad's failure to look out for danger signal, held proper.**

In action for death of brakeman, who was sent back to signal and stop train, and who was killed by train when he went to sleep on or dangerously near track, there was no error in refusing to submit issue of failure of operatives of train, which killed him to maintain lookout for danger signal, for such failure would not indicate negligence toward one who had no right and whose situation was therefore not reasonably to be anticipated.

Error to Court of Civil Appeals of First Supreme Judicial District.

Action by Mrs. Nolia Sears and others against the Texas & New Orleans· Railway Company. Judgment for defendant was affirmed by the Court of Civil Appeals (247 S. W. 602), and plaintiffs bring error. Affirmed.

Chas. Murphy, J. G. Donovan, and Woods, King & John, all of Houston,· for plaintiffs in error.

Baker, Botts, Parker & Garwood, of Houston, for defendant in error.

STAYTON, J. The application for writ of error presents the question of whether, under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), the defendant railway company owed to its brakeman, Eugene Sears, any duty of maintaining a lookout to discover and avoid running into and killing him with one of its trains, where, as the evidence shows, he was at the time of the accident lying asleep perilously near its track in pursuance of no right.

The widow of Sears brought the suit individually, as next friend of the children of the marriage who were minors and whom she joined, and as temporary administratrix of the estate of her deceased husband. She alleged these facts, her authority to prosecute the action, and the death of Sears on July 29, 1920, by reason of the negligence, in many stated respects, of the employees on a passenger train of the defendant company, resulting in the loss to his family of his support; and prayed for damages, for apportionment of the recovery, and for general relief.

There were allegations that, at and before the time of his death, Sears was "in the discharge of his duties" as brakeman of one of the company's freight trains, had at such

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

time been let off the train by the conductor, who was his superior, and left at a point on the track near Liberty, Tex., to stop, by means of signals, all other trains, so that they would not run into collision with the freight train as it proceeded ahead; had put out his signals, and because he had been on duty for about 24 hours, had become fatigued and tired from the long period he had been working and had fallen asleep near the track; and that the passenger train then and there ran into and killed him. There were further allegations that the casualty occurred at a place where employees should have been expected to be found in connection with their switching duties, and in disobedience of the brakeman's signals and the rules of the company applicable thereto. And, further, that on such date defendant was a railroad corporation doing business upon its line of railway as a common carrier, over which it "then and there, and at all times material to the issues of this case, operated cars and engines, and was at all said times engaged in the business of a common carrier handling both interstate and intrastate business, and all of the engines, trains, tracks, switch yards, and switch tracks belonging to said defendant railroad company, were on said date and are used in both intrastate and interstate commerce."

[1] It will be convenient at this point to interpolate that these allegations, in accordance with the theory of the trial and appeal and the contentions of both parties, bring the case within the operation and control of the federal Employers' Liability Act, because they state a cause of action in favor of the personal representative of deceased, for the benefit of his widow and minor children, against a common carrier by railroad, which was guilty of negligence that caused the death of one of its employees, while, though asleep, he was excusably so and was employed by it in interstate commerce by way of protecting its trains that were engaged in such commerce. Philadelphia, etc., Ry. Co. v. Di Donato, 256 U. S. 327, 41 S. Ct. 516, 65 L. Ed. 955; North Carolina Ry. Co. v. Zachary. 232 U. S. 248, 34 S. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159; Spokane, etc., Co. v. Campbell, 241 U. S. 497, 36 S. Ct. 683, 60 L. Ed. 1125; Southern, etc., Ry. Co. v. Gray, 241 U. S. 333, 36 S. Ct. 558, 60 L. Ed. 1030; Davis v. Green, 260 U. S. 349, 43 S. Ct. 123, 67 L. Ed. 299; Missouri, etc., Ry. Co. v. Wulf, 226 U. S. 570, 33 S. Ct. 135, 57 L. Ed. 355, Ann. Cas. 1914B, 134; Seaboard, etc., Ry. v. Duvall, 225 U. S. 477, 32 S. Ct. 790, 56 L. Ed. 1171; Hours of Service Act, U. S. Comp. Stat. §§ 8677–8678; Baltimore, etc., Co. v. Wilson, 242 U. S. 295, 37 S. Ct. 123, 61 L. Ed. 312; Garrett v. Louisville, etc., Ry. Co., 197 F. 715, 117 C. C. A. 109; and, see, also, Kansas City So. Ry. v.

266 S.W.—26

Cook, 100 Ark. 467, 140 S. W. 579, and Helton v. Alabama, etc., Ry. Co., 97 Ala. 275, 284, 12 So. 276.

The case was given to the jury upon special issues, involving plaintiffs' allegations of discovered peril and negligence in not obeying a discovered signal on the track, the amount of damages, and the amount of deduction to be made by reason of contributory negligence which, the court charged, was present as a matter of law. The jury's findings upon the substantive issues were considered favorable to the defendant, and the court accordingly denied plaintiffs all relief.

The plaintiffs had, however, requested the submission of three issues of negligence that were presented in the petition: The first, as to whether, in the exercise of ordinary care, by keeping a reasonable lookout, the operatives of the passenger train would have discovered Sears and realized his peril in time to have avoided striking him with the means at hand, etc.; the second, as to whether by maintaining such a lookout they would have discovered the danger signal on the track, and in that way realized Sears' peril in time to have avoided striking him with the means at hand, etc.; and the third, as to whether a failure in either of such respects was the proximate cause of his death.

These requested issues, involving the point of a duty to maintain a lookout, were refused by the trial court; and its actions in such respects were afterward, on an appeal to the Court of Civil Appeals at Galveston, assigned as error. That court, in affirming the judgment below, sustained the rulings in this regard upon the ground that, as was held in Newport, etc., Co. v. Howe, 52 F. 362, 3 C. C. A. 121, the defendant owed the sleeping brakeman no duty, and that there was no causal connection between the acts or omissions of the workmen on the train and his death. The court made a statement of the evidence, which is agreed to and adopted as correct by plaintiffs. In their application they now assign as error these holdings, alone, averring that they are not supported by this statement.

The evidence as thus presented (Tex. Civ. App.) 247 S. W. 603–605, will be given in substance, and in the aspect of it that is most favorable to plaintiffs. It will be seen, in a number of important respects, to vary from and fall short of the case as alleged in the petition.

On the 28th day of July, 1920, Eugene Sears was brakeman in defendant's employ on a freight train that, after a rest of 15 hours, left the town of Echo at about midnight, to haul interstate freight from that place to Houston. Early the next morning, it arrived in the vicinity of the town of Liberty where, because a steep grade or hill was encountered, the necessity was presented

of dividing the train, dropping a part of the cars on a side track and proceeding with the rest to the next town. On arriving at the latter point the engine was to place the cars, with which it had proceeded, on a side track and return for and bring forward those left near Liberty, reunite the train, and continue the trip.

A passenger train would have arrived at the latter place before the freight engine could return, and on this account, and because the passenger train had the right of way, the conductor intended to let it pass before returning for his cars on the siding near Liberty. It was also necessary to protect the partial freight train, as it proceeded beyond the hill, and the engine, as it returned light for these remaining cars, from any other trains that might approach from the direction of Liberty. For this purpose, the conductor, who was the superior of Brakeman Sears, left him at the side track in charge of the cars that were dropped at that point, instructing him to hold all trains by flagging them, excepting the passenger train. At this time, which was about five o'clock in the morning, Sears had with him a red lantern and a white lantern.

According to railroad practice and the rules of defendant, a red lantern was used to signify and warn trains of danger; such a light in front of a train would indicate that there was danger. The white lantern was used by railroad men to work and give signals with. The place for the red lantern as a warning was on the side of the track. The rules of the company under the heading, "visible signals," were to the effect that the color, red, indicated "stop." A torpedo placed on the track was also a stop signal.

An hour after Sears was left with the cars on the side track, he was seen, by persons not connected with the defendant, as he lay in a prone position, sleeping on the right of way near the main line. His head was close to one of the rails, being about 18 inches outside the ends of the ties and his body and legs angled away from the track. His red lantern, that appeared to be upon his arm, was either close to the outside of, or immediately within, the rail, and was lit. There was also in this vicinity a white lantern.

Shortly after daylight the passenger train arrived at this point running at the rate of 30 miles an hour. If the operatives of it had been maintaining a reasonable lookout they would have discovered Sears in his position near the track, from a distance exceeding that within which the engine and cars could have been safely stopped. When the train was upon him, about 20 feet away from him, Sears woke up and attempted to rise. He is described as having jumped up. Thereupon he was struck by the bumper of the engine and killed.

Upon this evidence it is contended by the plaintiffs that the requested issues should have been given, involving, as they did, the question of whether the defendant was guilty of negligence in failing to maintain a lookout so as to discover him or the red lantern and avoid the accident.

[2] Under the settled law of this state, a railroad company, being invested with "the extraordinary power of traversing the country with huge cars whose progress everywhere is necessarily attended with danger," when it puts "such dangerous machines in motion," owes to any one in their pathway, including even a trespasser, the duty involved in the requested issues, and is liable for injuries resulting from a breach of such duty, unless such person's own contributory negligence, where that defense lies, defeats a recovery. H. & T. C. Ry. Co. v. Sympkins, 54 Tex. 615, 38 Am. Rep. 632; St. Louis, etc., Ry. v. Watts, 110 Tex. 106, 216 S. W. 391; Pecos, etc., Ry. v. Suitor, 110 Tex. 250, 218 S. W. 1034; So. Kansas Ry. Co. v. Barnes (Tex. Civ. App.) 173 S. W. 880.

The defendant, however, asserts that since the case is controlled by the federal Employers' Liability Act, the rights and obligations involved are to be determined by that act and the common law, as interpreted and applied in the United States courts where at variance with the decisions of the state courts. It contends further that under the rules laid down by the federal courts, no duty of lookout arises in the case of an employee asleep on or dangerously near the track.

[3] The judgments of the Supreme Court of the United States are in accordance with the first of defendant's propositions—that is, the one concerning what law controls. Because, mainly, of the necessity for a uniform application of this legislation throughout the states, that court has repeatedly decided that, upon questions of substantive law in cases arising under it, the act and the common law, as interpreted and applied in the federal courts, control the rights and obligations of the parties, and are paramount to and exclusive of state laws, whether in the form of statutes or decisions. Central Vermont Ry. Co. v. White, 238 U. S. 507, 35 S. Ct. 865, 59 L. Ed. 1433, Ann. Cas. 1916B, 252; Southern R. Co. v. Gray, 241 U. S. 333, 36 S. Ct. 558, 60 L. Ed. 1030; New York, etc., Co. v. Winfield, 244 U. S. 147, 37 S. Ct. 546, 61 L. Ed. 1045, L. R. A. 1918C, 439, Ann. Cas. 1917D, 1139; Erie R. R. Co. v. Winfield, 244 U. S. 170, 37 S. Ct. 556, 61 L. Ed. 1057, Ann. Cas. 1918B, 662; New York, etc., R. Co. v. Tonsellito, 244 U. S. 360, 37 S. Ct 620, 61 L. Ed. 1194; and see McLain v. Chicago, etc., Co., 140 Minn. 35, 167 N. W. 349, 12 A. L. R. 688, authorities cited and note. Upon questions of what is due care, and of whether a lack of it is the proximate cause of the death of an employee,

the doctrine is especially important, because such questions involve an interpretation of a phrase of the act itself, that is, "death resulting in whole or in part from the negligence of any of the agents or employees," which, if left to the construction of the state courts, would make possible the changing of the federal law by the states against the authority of the national government.

[4] The defendant's first point is therefore correct, and an examination of his second position becomes necessary. Though the Texas rule, already given, is founded upon reason that must commend itself to any court and will necessarily be followed in this state wherever it applies, it must, upon the grounds just stated, in this particular phase of litigation, yield to that of the federal law if and where the two differ. The latter source will therefore be examined in so far as it illustrates and provides the rules and setting applicable to the present case.

A carrier by railroad, while engaging in interstate commerce, is liable in damages for death occurring to any of its employees while they are employed by it in such commerce, which results in whole or in part from the negligence of any of its other employees. U. S. Comp. Stat. § 8657. The fact that the deceased is found to be guilty of contributory negligence does not bar a recovery, but the damages are in such a case diminished in proportion to the amount of negligence attributable to him. U. S. Comp. Stat. § 8660.

A railroad company owes to any person, whether an employee or otherwise, who, in a condition of peril, is lawfully on or near its track, and hence reasonably to be expected there, a duty to avoid injuring him, by the use of diligence in maintaining a lookout and in stopping an approaching train before he is injured. Accordingly, it owes a duty of that nature to pedestrians and travelers using public crossings and streets, as well as to employees whose duties take them upon or over the tracks in main line operations. Continental Imp. Co. v. Stead, 95 U. S. 161, 24 L. Ed. 403; Newport News, etc., Co. v. Howe, 52 F. 362, 3 C. C. A. 121; Dickson v. Chattanooga, etc., Co., 237 F. 352, 150 C. C. A. 336, L. R. A. 1917C, 46, and authorities cited; Grand Trunk Ry. Co. v. Ives, 144 U. S. 428, 12 S. Ct. 679, 36 L. Ed. 485; Texas & P. R. Co. v. Modawell, 151 F. 421, 80 C. C. A. 651, 9 L. R. A. (N. S.) 646; Cahill v. C. M. & St. P. Ry. Co., 74 F. 285, 20 C. C. A. 184; St. L. & S. F. Ry. Co. v. Bennett, 69 F. 525, 16 C. C. A. 300; Seaboard, etc., Co. v. Koennecke, 239 U. S. 352, 36 S. Ct. 126, 60 L. Ed. 324.

Conversely, it owes no duty, except in the event of discovered peril, toward any person who is making an improper, wrongful or unlawful use of the roadbed and is not reasonably to be expected to be there. Upon this ground it owes no duty, before discovery, to trespassers nor to individuals, even at public crossings or on streets, who are not employing the place for a purpose fairly incidental to travel, but are lying down upon it, nor to servants, though their work calls them for some active purposes to the track, who are not using it in that way, but are without lawful excuse sleeping upon or dangerously near it. Newport News, etc., Co. v. Howe, 52 F. 362, 3 C. C. A. 121; Dickson v. Chattanooga, etc., Co., 237 F. 352, 150 C. C. A. 366, L. R. A. 1917C, 464, and authorities cited; Sheehan v. St. Paul & D. Ry. Co., 76 F. 201, 222 C. C. A. 121; Texas & P. v. Modawell, 151 F. 421, 80 C. C. A. 651, 9 L. R. A. (N. S.) 646; Cleveland, etc., Co. v. Tartt, 99 F. 369, 39 C. C A. 568, 49 L. R. A. 98; St. L. & S. F. Ry. Co. v. Bennett, 69 F. 525. 16 C. C. A. 300; New York, etc., Co. v. Kelly, 93 F. 745, 35 C. C. A. 571; Smith v. B. & O. R. Co., 210 F. 414, 127 C. C. A. 146; Grand Trunk Ry. Co. v. Flagg, 156 F. 359, 84 C. C. A. 263; Payne v. Ill. Cent., 155 F. 73, 83 C. C. A. 589; Krysiak v Pennsylvania R. Co. (C. C. A.) 270 F. 758; De Baur v. Lehigh Valley R. Co. (C. C. A.) 269 F. 964; Felton v. Aubrey, 74 F. 350, 20 C. C. A. 436; McCarthy v. New York, etc., Co., 240 F. 602, 153 C. C. A. 406.

These common-law decisions, as most of the cited cases show, are not dependent upon the doctrine that contributory negligence is a bar to recovery nor upon that of assumed risk, and are therefore not affected by the federal Employers' Liability Act which withdraws those defenses in important respects. Under that legislation, an employee, if in a situation that is not wrongful, may recover, although he may be negligent of his duty. Consequently, in cases where brakemen have omitted to put out signals to stop approaching trains as was their duty, but instead have remained in their own cars inattentive or permissively asleep, it has been decided that negligence of the defendants was established through that of the other employees in disobeying signals and dispatching injudicious orders, and that the contributory negligence of the injured persons was no bar to their recovery. Union P. R. Co. v. Hadley, 246 U. S. 330, 38 S. Ct. 318, 62 L. Ed. 751; Pennsylvania Co. v. Cole, 214 F. 948, 131 C. C. A. 244.

On the other hand, while contributory negligence is abolished as a complete defense, if the negligence of the employee succeeds that of the defendant, and is the sole proximate cause of his injury or death, there can be no recovery under the federal Employers' Liability Act. Great Northern Ry. Co. v. Wiles, 240 U. S. 444, 36 S. Ct. 406, 60 L. Ed. 732; Frese v. Chicago, etc., Co., 263 U. S. 1, 44 S. Ct. 1, 68 L. Ed. 131; Phillips v. Penn. R. Co. (C. C. A.) 283 F. 381, cer-

tiorari denied 260 U. S. 731, 43 S. Ct. 93, 67 L. Ed. 486; McCalmont v. Penn. R. Co. (C. C. A.) 283 F. 736.

And, finally, it has been decided, as would be expected, that the act carries forward the relevant doctrines of negligence established by the decisions of the United States courts before its passage (Central Vermont v. White, 238 U. S. 507, 35 S. Ct. 865, 59 L. Ed. 1433, Ann. Cas. 1916B, 252; So. Ry. v. Gray, 241 U. S. 333, 36 S. Ct. 558, 60 L. Ed. 1030), among which may be listed those above cited and referred to, from Grand Trunk Ry. Co. v. Flagg, 156 F. 359, 84 C. C. A. 263, back, and, as already observed, that the decisions of the national courts, upon questions of the common law of negligence, whether announced prior or subsequent to the passage of the act, are paramount to any conflicting state decisions.

In these and the other federal cases, it may be added, no instance of a conflict, as to the subject under investigation, has been noted. The controlling doctrines established by them are the work of each of the nine Circuit Courts of Appeals, and have been recognized, it is thought, by the Supreme Court of the United States.

The one of these decisions most nearly in point, and a leading case, is Newport, etc., Co. v. Howe, which was followed by Justice Lane in the opinion for the Court of Civil Appeals below. The cited decision involved facts somewhat more favorable to plaintiff than does the present case. In it a brakeman was sent out to signal an approaching train and to advise the engineer of the whereabouts of other cars. He went forward, sat down on the end of a tie, put his light down near him and went to sleep with his arm thrown over the rail. His light was discovered but he was not, until too late; the train severed his arm. The district court instructed a verdict for defendant. The Circuit Court of Appeals decided that this ruling was correct upon two grounds; first, because of the fellow-servant doctrine, and, second, because of the plaintiff's contributory negligence.

But it was contended by plaintiff that his peril was discovered, or, if not, that it should have been discovered in the exercise of ordinary care on the part of the operatives of the train, and, that regardless of his own contributory negligence, the company was liable under the doctrine of last clear chance. The court, speaking through Judge Taft, decided in reply to these last contentions, first, that there was no discovered peril. The discussion of whether there was a duty to discover the man by maintaining a lookout, was next introduced in the following manner:

"Upon the point, however, whether, if the engineer had looked out, he could have seen Howe's perilous position in time to stop the engine before striking him, the evidence is conflicting, and, if the point is material to the case, it should have been submitted to the jury. It remains to inquire, therefore, whether a failure of the engineer to see Howe on the track in time to avoid the accident, when by looking out he might have seen him, can be said to be a legal cause of the accident. If so, it is the sole proximate cause, and would render the company liable."

Having then decided upon numerous authorities that there was no duty, prior to discovery, toward the man asleep upon the track and therefore that in such a case there was no negligence that could constitute the proximate cause of the accident, the court quoted the following, which is the gist of the decision in the case of Denman v. Railroad Co., 26 Minn. 357, 4 N. W. 605, a case involving a collision with one who was not an employee:

"In our opinion there is no evidence whatever of negligence on the part of the defendant in a case of this kind. The plaintiff had no right whatever to sit or lie down upon the track, or near enough to it to be within reach of a passing train, and go to sleep. If he saw fit to do so, he took the risk upon himself. The defendant owed him no duty, except that of exercising due diligence to avoid injuring him, after discovering that he was there."

And Judge Taft's court added:

"The foregoing is, in our opinion, a correct statement of the law governing the present case."

The court then said, regarding the doctrine that was being invoked—the doctrine of last clear chance:

"We are aware that there are many cases which are collected in Sherman & Redfield's work on Negligence (4th Ed. § 99, note) in which the rule is thus expressed: The defendant is liable, in spite of plaintiff's negligence, if, after he discovers, or ought by due care to discover, plaintiff's peril, he might, by the use of due care, avoid the consequences of plaintiff's negligence, and does not do so."

But concluded, as to the second of the two branches of the doctrine:

"The due care with respect to discovering plaintiff's negligence depends upon the relation of the parties. In a case like the present, where, in our view, there is no duty on the part of defendant to discover plaintiff's peril, the additional clause adds nothing to the effect of the rule, but implies a duty which, as we have found, does not exist."

Accordingly the court held that the instructed verdict was proper.

The plaintiffs contend that the above decision having been first upon the fellow servant rule, what was said in the latter part of it upon the point now under investigation was unnecessary and consequently dictum, and that, in any event, it was dependent up-

on the defense of contributory negligence and has been consequently overruled by the federal Employers' Liability Act, since passed, which abolishes that defense, in so far as it furnishes a complete bar to a plaintiff's suit.

As to the first of these contentions, the Supreme Court of the United States has decided that where there are two grounds upon either of which a judgment may be rested "the ruling on neither is obiter, but each is the judgment of the court." Union Pac. R. Co. v. Mason City Co., 199 U. S. 164, 26 S. Ct. 20, 50 L. Ed. 134.

As to the second contention, it is true that the federal Employers' Liability Act has eliminated contributory negligence as a complete defense, but it cannot correctly be viewed as having taken the force from this decision as to the duty of lookout, because the ruling in that respect was upon a point of defendant's negligence that would have been the same whether contributory negligence were present or not, in that it came under the doctrine of last clear chance—the principle adverted to from Sherman & Redfield. Under that doctrine, the new negligence, as said in the case, had to be "the sole proximate cause."

That the ruling is as strong either with or without the appearance of the defense of contributory negligence, is evidenced not only by the opinion itself, but by the cases that are cited in it, which decide that no "duty" before discovery is owed a man sleeping on or near the track, and by the cases that follow this Howe Case upon the point under investigation. The latter will be stated briefly.

In Kansas City, etc., Ry. Co. v. Cook, 66 F. 115, 13 C. C. A. 364, 28 L. R. A. 181, a trespasser sued a railroad company for being run over in its yard, and, by a court composed of Judges Taft, Lurton, and Severens, it was decided on the authority of the principal case, where "the same rule was announced," that since plaintiff was "wrongfully upon the track, no duty arose in his favor until his presence was discovered."

In Felton v. Aubrey, 74 F. 350, 20 C. C. A. 436, there was evidence showing that the plaintiff, a boy nine years of age, walked in front of an approaching train at a place where he had no right to be. The Circuit Court of Appeals, composed then of Judges Taft, Lurton, and Hammond, decided that the district court should have submitted the issue of trespasser, and no duty in the absence of discovery, upon the "principle," involved in the Howe Case and the Cook Case above cited: that the company could "operate its trains without regard to the possibility that unauthorized persons may be trespassers thereon"; and that "it need not anticipate * * * such intruders."

In New York, etc., Ry. Co. v. Kelly, 93 F. 745, 35 C. C. A. 571, the plaintiff was a pedestrian who had left a highway and lain down on the track of defendant. In deciding that the trial court erred in charging upon the issue of maintaining a lookout, because the engineer owed "no such duty to a trespasser," the Circuit Court of Appeals cited and followed the principal case, and several of the decisions upon which it was based.

In Dickson v. Chattanooga Ry., etc., Co., 237 F. 352, 150 C. C. A. 366, L. R. A. 1917C, 464, plaintiff got upon the track in a public street, lay down upon it, went to sleep and sustained the injuries for which he sued by reason of being run over. Judge Sandford, on the district bench, charged the jury that while the man had the right to use the track as a part of the highway, he did not have the right to do so as he "was using" it, which was "an unauthorized use," and that the company was not required by law to maintain a lookout for people "that are using the track as a bed." In affirming this ruling, the Circuit Court of Appeals cited the principal case and numerous other decisions for the opinion that one who makes such "an improper, wrongful, or unlawful use of a street, or railroad track, as to become a trespasser thereon, and, in so doing, places himself in a position where he is likely to come into collision with a passing train or car, cannot recover for injuries so received, unless those in charge of the train or street car, by the exercise of reasonable care and diligence after the discovery of his peril, might have avoided the accident." And in deciding that plaintiff was such a trespasser or in an "analogous" position, it ruled that "one who exceeds the limits of, or abuses or misuses, his rightful privilege, and, in so doing, infringes * * * upon the property and property rights of another, is, to the extent of such infringement or encroachment, as much a trespasser as he would be if he were doing the same thing without license of any kind or character."

So it is quite evident that the federal doctrine that no duty is owed by a railroad company to one asleep upon its track is not dependent for its force upon the defense of contributory negligence.

It is dependent upon the fact that the injured person in the manner of his use of the track has no right. And while, as would be expected, the defense of contributory negligence arises in many of the cases that involve the point, it does not do so in all of them. It is not found at all in some of them. Sheehan v. St. Paul, etc., Co., 76 F. 201, 22 C. C. A. 121; New York, etc., Co. v. Kelly, 93 F. 745, 35 C. C. A. 571; Howe Case, supra. And in others, it is not only absent, but, on account of the infancy of the injured person could not have been present. Baltimore, etc., Co. v. Hellenthal, 88 F. 116, 31 C. C. A. 414; McCarthy v. New York, etc., Ry. Co., 240 F. 602, 153 C. C. A. 406.

It logically follows that the principle of law thus established continues to be controlling under the operation of the federal Employers' Liability Act, which abolishes contributory negligence as a complete defense. Moreover, it has been so decided. In De Baur v. Lehigh Valley R. Co. (C. C. A.) 269 F. 964, a case brought under that act, a flagman was run over, who, instead of signaling, was sitting upon the track as if asleep. The Circuit Court of Appeals decided that "the duty which was owed by those in charge of the train which struck deceased was that, when the deceased was first seen sitting on the track, the engineer was obliged to use all means at his command to stop the train. * * * The defendant below was liable if it could have avoided the death by the exercise of ordinary care after actually discovering his perilous situation." The opinion recognizes that the rule would have been otherwise if the position of deceased while on duty had been shown to be the result of illness or of exhaustion from overwork during excessive hours of service.

In the case of Gray v. Southern Ry. Co., 167 N. C. 433, 83 S. E. 849, the facts were that a brakeman, sent out to place torpedoes on the track and stop an oncoming train, instead of doing so and standing aside in a place of safety, as was his duty, lay down outside the rails with his head on a cross-tie and his lighted lanterns beside him and went to sleep. The train failed to stop and he was killed by a low step as he sought to rise. The action was under the federal Employers' Liability Act. The trial court charged the jury that the defendant was liable if a failure to maintain a lookout was the proximate cause of the accident, and overruled defendant's exceptions raising the point that no duty arose until the peril of the brakeman was actually discovered. The Supreme Court of North Carolina sustained these rulings upon the strongest phase of the doctrine of last clear chance—the one involving a duty to use care to discover—as that doctrine had been settled by the decisions in that state. But one of the justices dissented upon the ground that, since the case came under the federal Employers' Liability Act, the federal, and not the state, decisions were controlling, and established the contrary rule, that is, that no duty was owed until the brakeman's peril was discovered.

To sustain his dissent he cited and quoted from the two lines of decision that have been followed in the present opinion—that denying the existence of a duty until peril is discovered, and that announcing the exclusive force of the act and of the common law, as interpreted and applied in the federal courts.

The Supreme Court of the United States (Southern R. Co. v. Gray, 241 U. S. 333, 36 S. Ct. 558, 60 L. Ed. 1030) had before it this disagreement, and also the argument of counsel which clearly raised the same points. The argument for the railway company cited both of these lines of decision. The representative of deceased contended, as stated in the opinion of the court, through Justice McReynolds, that, had a proper lookout been kept, the danger signals would have been discovered, thus giving rise to the duty of precaution; and that the engineer was not justified in waiting to act in this respect until he discovered the sleeping brakeman. The court decided that under the evidence the accident could not have been avoided in any event because of the physical circumstances, but upon the points thus raised by counsel for plaintiff (the defendant in error in that court) said:

"As the action is under the federal Employers' Liability Act, rights and obligations depend upon it, and applicable principles of common law as interpreted and applied in federal courts [citing authorities]. Negligence by the railway company is essential to a recovery; and there is not a scintilla of evidence to show this under the most favorable view of the testimony urged by counsel for defendant in error. When it first became possible for the engineer to see signal lights 1,254 feet away, he had a right to suppose the brakeman was standing there on guard. Immediately he says, the customary signal was sounded. No duty to the brakeman demanded an instant effort to stop the train; the indicated danger was more than half a mile away."

The only "applicable principles of common law, as interpreted and applied in the federal courts" being those settled in the decisions commenced and headed by the Howe Case, which deny a duty in such a situation until peril is actually discovered, and which were so clearly presented before the court in this instance; there should be no doubt, from the above opinion, that these decisions are considered by the Supreme Court as controlling in questions of negligence arising under the federal Employers' Liability Act.

[5] From the authorities that have been cited, the conclusion follows that under the common law, which defines negligence and proximate cause, as those principles are contemplated by the federal Employers' Liability Act, a carrier by railroad is under no duty to maintain a lookout for a brakeman who is sent out to signal and stop a train, and who, without lawful excuse being shown, goes to sleep on or dangerously near the track.

The evidence in the present case is more adverse to plaintiffs than that of any of the decisions that have been mentioned. The brakeman, Sears, is not shown to have had a right to use the company's roadbed for the purpose of sleeping, and, in addition, is proved to have had no duty at all in connection with signaling the passenger train; for

he was to let that train pass. Moreover, no excuse or reason for his action was given. In these circumstances, there being under the federal law no duty toward him prior to his discovery, and, there being a jury finding of no discovery, the trial court did not commit error in refusing to submit the requested issue which was based upon a duty to maintain a lookout for him.

Necessarily, no such duty arose if Sears was not lying· in a position of danger, but sustained his mortal injury by reason of a sudden jump when the train was upon him. Felton v. Aubrey, 74 F. 350, 20 C. C. A. 436; Great Northern Ry. Co. v. Wiles, 240 U. S. 444, 36 S. Ct. 406, 60 L. Ed. 732; Frese v. Chicago, etc., Co., 263 U. S. 1, 44 S. Ct. 1, 68 L. Ed. 131. It should be added, though, that the allegations of plaintiff that Sears was in a position of danger are supported by the evidence.

[6] Moreover, for the reasons discussed, the trial court committed no error in refusing to submit the issue of a failure to maintain. a lookout for the danger signal. An omission of the employees on the passenger train in this respect would, because of a rule of the company, have been evidence of negligence toward those to whom a duty was owed (Felton v. Harbeson, 104 F. 737, 44 C. C. A. 188) and would have been sufficient in such a case to establish that result, whether the signal had been seen or not (Union, etc., R. Co. v. Hadley, 246 U. S. 330, 38 S. Ct. 318, 62 L. Ed. 751); but, on plain principles of law, it would not have indicated negligence toward one who had no right, and whose situation was therefore not reasonably to be anticipated.

Like the omission of any other precaution required at common law, or even by statute (as in the case of crossing signals, Norfolk, etc., Co. v. Gesswine, 144 F. 59, 75 C. C. A. 214) the disobedience of a rule is only negligence towards those who have a right for the protection of which a duty arises. And, as has been seen, the deceased in this case was not in the latter position. In addition, a failure of compliance with the rule was not as to him the proximate cause of his death, because a person in his situation could not have been "reasonably anticipated." Newport News, etc., Co. v. Howe, 52 F. 362, 3 C. C. A. 121; St. L. & S. F. v. Bennett, 69 F. 525, 16 C. C. A. 300; Felton v. Aubrey, 74 F. 350, 20 C. C. A. 436; Smith v. B. & O. Ry. Co., 210 F. 414, 127 C. C. A. 146; Kansas City, etc., Co. v. Cook, 66 F. 115, 13 C. C. A. 364, 28 L. R. A. 181; Texas, etc., Co. v. Modawell, 151 F. 421, 80 C. C. A. 651, 9 L. R. A. (N. S.) 646; Sheehan v. St. Paul, etc., Co., 76 F. 201, 22 C. C. A. 121; Tutt v. Ill. Cent. R. Co., 104 F. 741, 44 C. C. A. 320. And not being the proximate cause, any disobedience of the rule, for that reason, fell short of be-

ing efficient negligence. Pheasant v. Director General (C. C. A.) 285 F 342; Felton v. Harbeson, 104 F. 737, 741, 44 C. C. A. 188; Chicago, etc., Co. v. Richardson, 202 F. 836, 121 C. C. A. 144; Bonner v Bean, 80 Tex. 152, 15 S. W. 798; Dahlen v. Hines (C. C. A.) 275 F. 817; Terre Haute, etc., Co. v. Mansberger, 65 F 196, 12 C. C. A. 574; Louisville, etc., Co. v. Ward, 61 F. 927, 10 C. C. A. 166.

With this true, the second of the requested issues was properly refused. The third, as to proximate cause, depending upon the first two, required, for the reasons discussed, the same disposition.

No complaint is offered of the rulings of the Court of Civil Appeals in any other respects.

We recommend that the judgment of the district court and of the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.